# Riley Walton *v.* S. W. Caldwell and J. F. Naley, Appellants.

*Vendor and vendee—Parol evidence—Fraudulent representations—Question for jury.*

Where an agreement for sale of land, regular and absolute on its face and duly executed by the parties, is defended against by the vendees as induced by false and fraudulent representations, and the court leaves the question to the jury on vendees' own theory, and the jury finds for the plaintiff, the evidence being conflicting, it ends the matter; it is incumbent on the vendees to satisfy the jury by clear, precise and indubitable evidence that the written contract did not mean what it said, or that it was being used against them for a fraudulent purpose.

*Charge of court—Inadequate presentation—Duty of counsel to specify.*

Where the trial judge calls attention by name to the witnesses on both sides and in a general way to the really important testimony, and the jury is charged to remember what was not then specially adverted to, if anything is not made as prominent as the parties desire, it ought to be called to the attention of the court at the time.

If the trial judges were compelled to weigh their utterances regarding the evidence in the exquisitely balanced scales sometimes employed by ingenious counsel to discover whether too much or too little has been said, few charges would stand the test.

Argued April 19, 1897. Appeal, No. 84, April T., 1897, by defendants, from judgment of C. P. Westmoreland Co., May T., 1895, No. 720, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit to recover price of land sold. Before DOTY, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $874.50. Defendants appealed.

*Errors assigned* were (1) In not refusing to affirm the plaintiff's first point which reads as follows, to wit: "1. Under the pleadings and proofs in this case the defendants allege and undertake to set up, as a bar to the plaintiff's right to recover, that the contract upon which suit brought, is not absolute as indicated in the paper, but was entered into as a trick or artifice to induce a supposed purchaser to buy the lands therein described at an enhanced price, and that failing in such purpose, the contract was to be void and the hand money refunded to the defendants, and we say to you that the law does not in such case lend any assistance to extricate a confessed rogue from the toils in which he has so involved himself, and your verdict must be for the plaintiff. *Answer:* That question will be reserved; it is a question of law arising upon the facts recited in the proposition, and will be reserved for further consideration and determination by the court, and your verdict, whatever it may be, will be subject to the question of law reserved. That question will be controlling in this case. The plaintiff contends that, even admitting that the defendants have made out what they contend for, in point of law they ought not to be permitted to set up such defense here because they are alleging that they were parties to a contract; at least, that they went into a sham arrangement for the purpose of deceiving somebody else, and as their appeal here is necessarily an appeal to a chancellor exercising equitable powers, that their appeal ought not to operate a defense. If this question were answered in the affirmative it would be decisive and would take the case from you; if we answer it in the negative we would have no further time for the consideration of the important question raised, and, therefore, as we stated at the outset, that you may not be embarrassed by any question of law and be free to determine whether it was a bona fide or a sham arrangement, as contended for by the one side and the other, we prefer to submit to you the question of fact."

The manner of reserving the question raised by this point was such as to mislead the jury and prejudice their minds against the defendants. (2) In not refusing the plaintiffs' second point which reads as follows, to wit: "2. There is no evidence in this case sufficient to defeat the plaintiff's right to recover, and your verdict must be for the plaintiff for the balance of

the purchase money, with interest. *Answer:* This question is reserved."

The failure of the court to refuse this point was calculated to mislead the minds of the jury to the prejudice of the defendants. (3) In saying to the jury that, "it is alleged on the part of the defendants that the agreement was not intended to stand; that it was a mere sham; that it was intended to mislead a third party." This language used in the connection in which it was stated to the jury by the court below had a tendency to prejudice the minds of the jury against the defendants. The use of the word "sham" by the court below was not warranted by the evidence in the case. (4) In their failure to state to the jury the reasons given by the defendants why the agreement should not be enforced against them.

The court nowhere in their charge stated the false representations alleged to have been made by the plaintiff, nor the parol understanding alleged to have existed between the plaintiff and the defendants prior to the execution of the agreement and by reason of which the defendants were induced to sign the agreement. (5) In quoting largely from the testimony of witnesses offered by the plaintiff and in omitting to mention the testimony of witnesses offered by the defendants in direct contradiction to the testimony offered by the plaintiff.

This was calculated to throw discredit upon the testimony offered by the defendants and prejudice the minds of the jury against them. The language of the court below, above complained of, is as follows, to wit: "There were called upon the part of the defendants, several other witnesses, Maud Fisher, Joseph Jamison and Freeman C. Gay, and these all testified as to negotiations in regard to this property. Homer Robinson was called and testified that he was a clerk in the office of Caldwell & Co., and we believe the only thing he testified to was, that he did not deliver this deed to Riley Walton. If he said anything further you will remember. Robert Jamison and Joseph Jamison also, you will remember what they testified to." (6) In not furnishing to the jury, adequate instructions as to the merits of the defense and in their failure to quote or comment upon the testimony produced in support of that defense. This had a tendency to prejudice the minds of the jury against the defendants.

*Atkinson & Peoples* and *Spiegel & McGeary*, for appellants.— We have always held it to be a fatal error to confine the attention of the jury to one view of the case, when there is more than one to consider: Garrett v. Gonter, 42 Pa. 143.

The general rule of this court is not to reverse, unless the point is distinctly made in the court below; but there are cases where a charge is manifestly inadequate to the case before the court, and which therefore necessarily misleads: Gregg Township v. Jamison, 55 Pa. 468.

A charge whose tendency as a whole is to belittle and prejudice one side, and which is not in expression and tone a judicial presentation of the case, is error: Heydrick v. Hutchinson, 165 Pa. 208.

The trial judge erred in partially and inadequately submitting the case to the jury to defendants' prejudice: Philadelphia Trust Co. v. P. & E. Railroad Co., 177 Pa. 38, 52.

*V. E. Williams*, for appellee, submitted no paper-book.

OPINION BY WICKHAM, J., July 23, 1897:

The plaintiff, being the owner of a town lot, agreed to sell the same to the defendants, for the price of $900, of which sum $100 were practically paid in hand. The contract is evidenced by an agreement in writing, regular and absolute on its face, and duly executed by the parties.

In due time a deed for the property was tendered to the defendants, who refused to accept it, on the ground that they had been induced to enter into the agreement by certain representations made to them by the plaintiff, some of which were false and fraudulent. These alleged representations are contained in the affidavit of defense, and by reference are made part of the defendants' plea. Their tenor is as follows : that the defendants did not purchase in good faith, but to enable them to sell the lot, at an advance, as the plaintiff's agents, to one Mrs. Fisher who owned adjoining property and who would not deal with Walton, but would pay $1,050 for the lot if she thought that Naley was after the same, as her stable and buggy house were built thereon to the extent of eight inches, and she was moreover averse to anyone buying and building on the lot,

for the reason that the sale of her own property would be thereby materially injured ; that he, the plaintiff, would guarantee that the sale to Mrs. Fisher could be made for the price of $1,050, but if no sale were effected the article of agreement should be deemed void and the $100 paid back, and that the $150 to be gained by the sale to Mrs. Fisher, were to be divided in equal proportions between Walton, Caldwell, and Naley.

Caldwell was a real estate agent; Naley was a carpenter. The latter, according to Caldwell's testimony, was to go to the lot and pretend to stake out a location for a house thereon, this of course being intended to alarm Mrs. Fisher and enable the three men to consummate the alleged conspiracy. No sale was made to the lady, and it is alleged that Walton's representations, as to her willingness to buy, were untrue, she not wanting the lot at any price. The defendants therefore took the position that they were not liable on their written agreement, and were entitled to a return of the $100 they had paid thereon.

On the other hand the plaintiff denied that he had been guilty of any fraudulent or deceitful representations, and averred that the sale to the defendants was real, as it purported to be, and not made for the purpose of fooling Mrs. Fisher.

The evidence was conflicting, and the learned trial judge left the facts to the jury, reserving the question whether under the defendants' own theory of the case, even if sustained by the proofs, they had any legal defense. It certainly was their duty to satisfy the jury by clear, precise and indubitable evidence that their written contract did not mean what it said, or that it was being used against them for a fraudulent purpose. The jury found that the defendants were not deceived and defrauded, that the sale was bona fide and not as the defendants in effect contended, a mere sham. This ends the whole matter, and we need not consider whether the defense was sufficient in law.

The defendants' complaint that the learned trial judge erred in using the word "sham," in connection with the transaction between the parties, is unreasonable, in view of the theory of the defense that the sale was not genuine, but a pretended or sham one.

It is a mistake to assert, as is done in the fourth assignment of error, that the court nowhere in the charge called the attention of the jury to the false representations, alleged to have

been made by the plaintiff, or to the alleged parol understanding that led to the agreement. The matters, so far as they appeared in the evidence, were sufficiently presented. Any juror of ordinary intelligence, hearing the evidence and the charge, would know precisely what was in issue. The case was simple and easily understood and, therefore, did not require a very formal and elaborate presentation.

We cannot say that undue prominence was given to the plaintiff's evidence, nor that the evidence for the defense was slurred over, as is averred in the fifth and sixth assignments of error. The charge called attention, by name, to the witnesses on both sides, and in a general way to the really important testimony, and the jury were told to remember what was not then specially adverted to. If anything were not made as prominent as the defendants desired, it ought to have been called to the attention of the court at the time.

If the trial judges were compelled to weigh their utterances, regarding the evidence, in the exquisitely balanced scales sometimes employed, by ingenious counsel, to discover whether too much or too little has been said, few charges would stand the test. The only safe course would be to read the whole evidence word for word to the jury, or else carefully avoid mentioning it at all.

The specifications of error are overruled.

Judgment affirmed.