Ina L. McCord *v.* J. L. Whitacre, A. A. Farren and James Hilty, Appellants.

*Charge of court—Inadequate instructions.*

A charge is inadequate which fails to present to the consideration of the jury just what the issue is, by statements of matters of fact upon which the case turns, and by a clear statement of the rules of law applicable to the question; but the court's duty is discharged if the judge presents the case in such a way that the jury will know what conclusion arises under the law from the facts proved; he is not obliged to deliver an elaborate dissertation on the law.

*Practice, C. P.—Appeals—Affirmance of points—Charge of court.*

When no positive error in the charge is pointed out and the points of the party complaining have been unqualifiedly affirmed, it must be a very plain case to warrant the appellate court in reversing upon the ground that the court did not analyze the testimony, or did not sufficiently instruct the jury as to the rules for determining its value.

Argued May 9, 1898.    Appeal, No. 29, April T., 1898, by defendants, from judgment of C. P. Armstrong Co., March T., 1896, No. 255, on verdict for plaintiff.   Before RICE, P. J., WICKHAM, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Feigned issue.   Before RAYBURN, P. J.

The facts sufficiently appear from the charge of the court below, as follows:

This is an issue joined between Ina L. McCord, J. L. Whitacre, A. A. Farren and James Hilty. Ina L. McCord is the plaintiff, J. L. Whitacre, A. A. Farren and James Hilty are the defendants; and it appears from the evidence that J. L. Whitacre, A. A. Farren and James Hilty had certain judgments against David J. McCord, the husband of Ina L. McCord, and upon those judgments they issued executions and levied upon property which they allege to be the property of David J. McCord. A claim was made to that property by his wife, Ina L. McCord, the plaintiff here, stating that the title to that property was in her and not in her husband, David J. McCord; and notice being served upon the sheriff he comes into court stating

these facts and asks for what is known in law as an interpleader. The necessary steps being gone through, upon a petition an issue was framed, upon which Ina L. McCord was made plaintiff and these three men made defendants to try the title to the personal property claimed by her in the notice to the sheriff at the time he made the levy upon the property. Now, the property in dispute here consists of two thirds interest in a hay press, two thirds of all the grain in the ground, two thirds of the hay in the barn, ten head of cattle, six horses, two double sets of harness, two wagons, cart and harness, two plows, one harrow, and ten head of sheep. As to the ten head of sheep, gentlemen, we would say to you that it would be your duty under the evidence in this case to find in favor of Ina L. Mc-Cord as to the ten head of sheep. The evidence on the part of the plaintiff seems to substantiate her claim as to the sheep, that they were given to her by James McCord, and there is no testimony in opposition to that fact.

Now, as to the other property: Ina L. McCord claims through her testimony that the hay press was purchased by her from Edward E. Heilman; that she owns the two thirds of it, and W. S. McLaughlin the other third. That at the time of the purchase the price of the hay press was $266, $100 to be paid down at the time of the delivery of the hay press, and two notes given for the balance. The notes are in evidence before you; they are signed by Ina L. McCord, David J. McCord, her husband, W. S. McLaughlin and J. H. McLaughlin. She states that she paid the hand money, and that the second note was paid by money that she raised from the sale of a horse which she sold for $80.00, and $20.00 in cash that she got from the earnings of the hay press.

Now, as to the grain in the ground: two thirds of that she states belongs to her, and she offers in evidence in support of her claim a deed for the land upon which this grain was raised. That deed purports to be from David J. McCord, the administrator of John McCord. It appears that John McCord was the owner of a farm in Cowanshannock township, and that his son David J. McCord after his death took out letters of administration upon the estate, and that in 1895 it was sold by him under an order of the orphans' court for the sale of real estate for the payment of debts, and purchased by Mrs. McCord, his

wife, the plaintiff here; and that after that time she employed a young man by the name of McLaughlin to farm the property for her, she getting two thirds of the proceeds of the farm, and he the one third. Now, as to the two thirds of the hay, the same question of title as to the real estate would govern. Then she also claims for ten head of cattle, six horses, two double sets of work harness, two wagons, cart and harness, two plows and one harrow. This property she testifies, was property that was sold upon the writ which Daniel Wilson had against her husband, and purchased by Wilson and then sold to James McCord, her uncle, and then by her uncle transferred to her, excepting one wagon, which she testifies that she purchased from a man by the name of Hoover, I believe it was.

Now, this is the testimony of the plaintiff in reference to the title to these goods, and if there was nothing else before you gentlemen you would not have any difficulty in saying that this property belonged to her. Now, the defendants claim that this property does not belong to her, but it is the property of her husband, and in support of that claim they offer in evidence certain proceedings that were had in the orphans court in the settlement of the estate of John McCord, from whom this land came. It is in evidence that John McCord died in 1888, and that D. J. McCord, the husband of the plaintiff here, became the administrator of the estate. That he filed an appraisement list, and that he subsequently filed an account, first partial account, and in that account he claimed as against his father's estate some $4,000 as a claim that he had against his father. That account was excepted to by the parties in interest and an auditor appointed, the exceptions were sustained, and the account of David J. McCord was not allowed. After that time David J. McCord or some one interested in the estate, I believe it was some of the—Mrs. Steer presented the petition to the court for a writ of partition to divide the land. A writ of inquisition was awarded, and a jury selected and the land appraised. It was appraised at some $2,600. Then a rule was served upon those interested, the heirs, to come in and accept this land at the valuation or show cause why the same should not be sold. At the time of the return of this rule it appears that David J. McCord came in and bid upon this property and took it at about $3,100, the order

of the court being that he was required to give recognizance to secure the other heirs for the purchase money that he was entitled to pay by this bid of his. The recognizance was not given by Mr. McCord, and the guardian of one of these minor heirs came into court and asked for a rule on David McCord to show cause why the sale should not be set aside. Upon the return of that rule, and the recognizance not being given by D. J. McCord, the decree made by the orphans' court awarding the land to D. J. McCord was set aside. Subsequent to that time, about 1895 I believe it was, D. J. McCord, as the administrator of the estate of John McCord, comes into court with a petition to sell the real estate for the payment of debts, setting forth a schedule of indebtedness in which was a certain note that was claimed to be due from the estate of John McCord to James McCord, the old gentleman that was upon the witness stand. An order was given the orphans' court to D. J. McCord directing him to sell the land. The land was advertised and sold, and was purchased by Ina L. McCord, the wife of D. J., for the sum of $2,500.50. The sale was confirmed and a decree made awarding this land to Ina L. McCord. An auditor was appointed to distribute the funds in the hands of D. J. McCord from the sale of this real estate, and if there was any left of the personal property, among the parties entitled thereto, after a contest was had with reference to the validity of this claim of James McCord against the estate of John McCord on this note which the auditor passed upon and decided in favor of the validity of the note, stating by this finding that it was a valid and subsisting claim against the estate of John McCord.

It is also in evidence on the part of the defense that some time in 1894, D. J. McCord gave to Daniel Wilson a note for $450, I think it was the evidence of P. A. Smeltzer. He testified that he was in Kittanning here in January, 1894, and that at that time D. J. McCord gave to Daniel Wilson a note for $450, and that upon that note there was an execution issued and the personal estate of D. J. McCord levied upon and sold. Now, with reference to that transaction, you have the evidence of P. A. Smeltzer, who states that D. J. McCord told him that John Wilson was in town and wanted to see him, and that he at that time gave this note to Daniel Wilson, and it

was given for $450, and that the indebtedness of D. J. McCord to Daniel Wilson was only about $130 or $140, that it was given for a sufficient amount to cover his property. Now, it is not disputed but what this note was in existence, that is as to the amount of $450, and there was an execution issued on it, because the records of the court show that, and the property sold. At time of the sale of this property it is undisputed also that it was purchased, or the greater amount of it, by John Wilson, the brother, I believe, of Daniel; and that in the evening after the sale there was an arrangement made between James McCord and John Wilson that James McCord would take this property, giving him $10.00 for his bargain. James McCord testifies to that, that he gave $10.00 for his bargain, that he did not pay him any money but gave him a note for the amount of the sale of the property, but the note was not paid yet, that he would have to pay; and that after this time he gave the property all over to Ina L. McCord, the plaintiff.

You have in evidence also in reference to this sale that at the time of it that Mrs. McCord purchased a horse and cart and harness for the sum of $15.00. She testifies that she paid for that out of her own money, that she had $100 before she was married, that she had made it working at an asylum at Warren. Now, P. A. Smeltzer testifies as to that, that the morning of the sale David McCord came to him and asked him for some money, that he would need some, and he let him have $20.00 or $25.00 that day; that he gave it to him in the pantry of the house the day of the sale, and then she paid for this horse, buggy and harness.

We call your attention to these different items of testimony so you will have it in mind well when you come to consider these matters, because you will have to dispose of those facts that are disputed.

P. A. Smeltzer also testifies that he was there at the time of the sale and that he bid on some of the hay, that he bid it up to $60.00 or $70.00 and that the conversation that he had had with D. J. McCord before that in reference to bidding on certain of the property, McCord told him it did not matter much how high it went; but when he was bidding on the hay, after he had bid it up to $50.00 or $70.00, McCord came to him and told him not to bid any more, that it was going beyond his bill or the judgment that was against him.

Now, in reference to this sale on the Wilson judgment, you have the evidence of some two or three witnesses who testify that before the sale was made D. J. McCord, the husband of the plaintiff here, came to them and asked them to take a note against him and sell him out. C. B. Lias was one witness called who testified that he had a conversation with Daniel Wilson prior to this time, and Wilson said all that McCord owed him was about $160. One or two other witnesses put it at $130 or $140.

A. A. Farren was called. He testifies that he had a conversation with D. J. McCord wherein he said he wanted to give him a note and to have him sell him out, and he wanted to give the note for enough to cover his property, that he expected to have some trouble with a man by the name of Bowser, I think it was, and that Wilson had said that McCord owed him only about $130 or $140.

There was a man by the name of Templeton who states that he had a conversation with Mr. McCord wherein McCord stated that he wanted to give him a note, and that he should issue on it right away and sell him out; there was nothing said about the amount, but at the time Templeton says all that McCord owed him was about $8.00 or $9.00.

You have in evidence before you also that Matthew Rankin, and one or two other witnesses, who state that they had conversations with D. J. McCord just subsequent to the death of his father wherein he stated that there were no debts against his father's estate, excepting what was owed to a man by the name of Boyer and to the Jewart estate, and for drilling a well and some other dribs, as they expressed it, and the funeral expenses.

You also have in evidence as to what was stated by James McCord just subsequent to the death of John McCord. Now, Mr. Hilty testifies that he was talking to James McCord, and that he was lamenting about the death of his brother and was feeling very badly in reference thereto, and upon Hilty's saying that there was plenty of property to pay the debts or he was not in debt much, the response made by James McCord at that time was, "Thank God there wasn't very many debts. The only debts were, the debt to Boyer and the Jewart estate and for drilling a well I believe and some other small debts and the

funeral expenses." Now you will remember gentlemen, that in order to show the title to this real estate in Mrs. McCord the plaintiff, there was offered in evidence the deed; there was also offered in evidence the note that was alleged to be owed by James Hilty to the estate of James McCord, and the assignment of it by James McCord to the plaintiff and upon the note that was given by John McCord to James McCord, D. J. McCord, the husband of this plaintiff, was a witness. Now, if James McCord had that note at that time against the estate of John McCord and D. J. McCord was a witness thereon then these statements that these witnesses make here as to the conversation that they had with James McCord and D. J. McCord in reference to the indebtedness of John McCord's estate, are inconsistent with that fact, because if James McCord held the note and D. J. McCord was a witness to the note, they could not help but know at the time they made these statements, if they did make them, that there was such a note in existence. We call your attention to these facts so you will remember when you come to consider all these facts as to the force of these matters.

[Now gentlemen of the jury, we have gone over about what the witnesses have testified to in this case. You will remember in considering the testimony of Hilty and Mr. Bowser as to what James McCord said in reference to the indebtedness of the estate. That James McCord was called upon the witness stand in rebuttal, and he stated that he had not any recollection of having any conversation with either Hilty or Bowser in reference to the indebtedness of the estate. It is for you gentlemen to say who is correct in this. You will also take into consideration the fact in considering the testimony of those witnesses who testify as to conversations with David J. McCord in reference to the indebtedness of his father's estate, that that is not contradicted. David J. McCord is a competent witness; he is not called upon the witness stand to contradict that at all.

Now you have gentlemen, first, the claim to this property; you have it itemized, what it is, and you have the testimony on part of the plaintiff in support of her claim showing title in her. And we say to you gentlemen, that it is incumbent upon the plaintiff here, she living with her husband and the property being on the place there and in the possession of both of them

that the presumption is that the property belongs to him, and it is incumbent upon her to show that the title is in her. Now, if this property is hers your verdict must be in favor of the defendant, with the exception of the ten head of sheep, the title to which has been shown to be in her.

Now, in determining that you will take into consideration all the circumstances of this evidence, all the surroundings and the facts that have been testified to before you by the witnesses and from that ascertain whether or not this title to this personal property is in her. If D. J. McCord and Daniel Wilson and James McCord and the plaintiff here Ina L. McCord entered into a combination or a conspiracy in order to sell out this personal property in order to delay and defeat and hinder the collection of the debts that were against him, then the plaintiff is not entitled to recover the title of any property if she got title from that source, if she knew these facts, if she knew what was going on. You will gather that from the relation of these parties, from the conduct at the time and manner of sale, and all that transpired there. You will say as men of good judgment whether or not Ina L. McCord was the owner of the land at that time and whether or not it was a scheme got up by David J. McCord in order to defeat his creditors.

Now, as to the grain in the ground, if you find from all the circumstances in this case that there was a scheme gotten up by D. J. McCord, notwithstanding the finding of the fact that the auditor found that the note of James McCord against the estate of John McCord was a valid and subsisting claim, if you find from the evidence before you that D. J. McCord was engaged in a scheme in order to put his property out of his hands to hinder, delay and defeat his creditors, then the wife here is not entitled to the proceeds of that estate, because the law is that when fraud touches the matter it is the duty of the court to leave to the jury all the circumstances surrounding the transaction so they can as men of good judgment come to a conclusion as to what is exactly right, fair and honest between the parties.] [1]

Now gentlemen, we will answer the points. You understand what the evidence is. We will answer the points submitted on the part of the plaintiff and on the part of the defendant.

The plaintiff's points are:

**1.** That under all the evidence in this case the verdict of the jury as to the ten sheep must be in favor of the plaintiff. *Answer :* That point is affirmed. You will find that in favor of the plaintiff.

**2.** That under all the evidence in this case the verdict of the jury as to two thirds of the grain in the ground and two thirds of the hay in the barn, must be in favor of the plaintiff. *Answer :* That point we refuse.

**3.** That there is no sufficient evidence to submit to the jury that James McCord, the purchaser of the property from John Wilson, had knowledge of or was concerned in the alleged fraudulent sale, and as the law is that a bona fide purchaser of chattels even from a fraudulent vendee acquires a good title, the verdict of the jury as to the property purchased by James McCord at the sheriff sale and afterwards given by said James McCord to Ina McCord, must be in favor of the said Ina Mc-Cord. *Answer :* That point is refused.

**4.** The bona fide purchaser of a chattel from a fraudulent vendee acquires a good title. *Answer :* [That point is affirmed. As an abstract principle of law that is correct. A bona fide purchaser of a chattel from a fraudulent vendee acquires a good title. So if James McCord was a bona fide purchaser of this personal estate at the time of the Wilson sale then he acquired a good title and the title he gave to Ina L. McCord was a good title; but if they were acquainted with the facts in order to cover up and avoid the collecting of debts from him, then they are affected with the fraud and the title would not be good in them.] [2]

**5.** If the jury believe from the evidence that either John Wilson or James McCord or Ina McCord were bona fide purchasers of any of the goods in dispute, without any notice of fraud, as to such goods the verdict of the jury must be for the plaintiff. *Answer :* [That point is affirmed.] [3]

**6.** Fraud is never presumed; it must be proved like any other fact. Suspicious circumstances will not do, but fraud must be proved by the preponderance of the testimony. *Answer :* [That point is affirmed; and in this case you will gather from all the facts and circumstances surrounding the transactions had by these parties whether or not the transaction between them was bona fide. You will take into consideration

the fact that the plaintiff here is the wife of D. J. McCord, that James McCord is the uncle of D. J. McCord; and also the fact as to the personal property that John Wilson from the evidence undisputed here, was not a creditor of D. J. McCord to the extent of the note which D. J. McCord gave him upon which this property was sold.] [4]

7. That J. S. Whitacre did not become the creditor of D. J. McCord until September 4, 1894, and A. A. Farren did not become his creditor until September 25, 1894, and they not being existing creditors of D. J. McCord at the time of the sheriff's sale, to wit: January 15, 1894, they cannot allege that said sale was fraudulent as to them. *Answer:* That point under the facts in this case we refuse.

8. That under all the evidence in the case the note of John McCord to James McCord dated October 30, 1886, was a valid claim against the estate of John McCord and was entitled to participate in the distribution of his estate. *Answer:* [That point so far as the evidence shown by the auditor's report is concerned, is affirmed. But in our general charge we have said to you that notwithstanding the fact that if it was a fraudulent sale of this property in order to defeat and defraud the creditors of D. J. McCord that the proceeds of this property, that is the product of the farm as shown by the levy, the two thirds of the hay in the barn and the two thirds of the grain in the ground, would be the title of D. J. McCord and not that of his wife, Ina L. McCord.] [5]

9. That the finding of John T. Crawford, Esq., the auditor, that the note of John McCord to James McCord was valid, is conclusive in this case, and the jury cannot go behind said finding. *Answer:* That point is refused.

10. That the final account of D. J. McCord which was confirmed by the court, shows that the estate of John McCord was insolvent, and that D. J. McCord had no interest therein that could be liable for his debts, and said account is conclusive in this case. *Answer:* That point is refused.

10½. The decree of the court confirming the sale of the real estate to Ina McCord, is binding and conclusive in this case, and there is no evidence from which the jury can find that said sale is fraudulent or void. *Answer:* That point is refused.

11. The fact that D. J. McCord aided in the management

of the hay baler conferred no right to it upon him or his creditors. *Answer:* [That point is affirmed.] [6]

12. If the jury believe the evidence of Robert Trollinger, that he sold the hay baler to Mrs. Ina McCord upon her own credit, and that the reason the name of D. J. McCord was put upon the note was that it was believed necessary to have the name of the husband upon the note to make it valid, the fact that D. J. McCord's name is to the note will in no manner affect the wife's title. *Answer:* That point is affirmed.

The defendant requests us to answer the following points:

1. If the jury find from the evidence that D. J. McCord fraudulently caused the sale of the real estate of John McCord, of which he was the owner of the undivided one half part, to be made to his wife, the plaintiff in this case, for the purpose of defrauding his creditors or any person or persons, that she knew of such fraud, that the result of such fraud was to hinder and delay the defendants in this case from the collection of their claims, then such sale of the real estate is void as to the interest sought to be defrauded and those injured by such fraud; and the interest in the crops and products of said farm that are included in the sheriff's levy and in the plaintiff's declaration and claimed by Ina McCord, the plaintiff, as owner of the real estate, are the property of D. J. McCord, and the verdict as to such interest must be found for the defendant. *Answer:* That point is affirmed.

2. If the jury find that the judgment of Daniel Wilson was given for $450, when there was only about $140 due, that it was given in order that a judicial sale might be had on an execution issued thereon for the purpose of hindering and delaying creditors, among whom were the defendants, or their assignors. That Ina McCord is not a holder of the property sold or its increase, or the results therefrom innocently and for value, then said sale is void as to the defendants and the title of D. J. McCord thereto was not divested, and as to those articles the verdict of the jury must be for the defendant. *Answer:* That point is affirmed.

Now, gentlemen, you will take this case, and as men of business ability and good judgment from the evidence that you have heard, and from the instructions we have given you as to the law, ascertain whether or not the verdict should be for the plain-

tiff or the defendant in this case, remembering that you must under the evidence find that the ten sheep belong to Mrs. Mc-Cord. You will have to find that in her favor.

Mr. Leason : We take an exception to the general charge of the court, and the affirmance of the plaintiff's fourth, fifth, sixth, eighth, eleventh and twelfth points.

By the Court: And now, June 6, 1896, before verdict and upon request, exception to the charge and answers to points is noted and sealed for the defendant.

Mr. Patton: We except to the charge of the court, and the refusal of the second, third, seventh, eighth, ninth, tenth and one half of the plaintiff's points, and the affirmance of the defendant's first and second points.

By the Court: And now, June 6, 1896, before verdict and upon request, exception to the charge and answers to points is noted and sealed for the plaintiff.

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1) to portion of the judge's charge, reciting same. (2–6) Answers to plaintiff's fourth, fifth, sixth, eighth and eleventh points, respectively, reciting same.

*M. F. Leason*, for appellants.—After a careful reading of the charge of the court, it is clear that the jury were insufficiently instructed, as to the discharge of the grave and serious duty imposed upon them. The court does not enlighten the jury as to what is a fraud. The court does not enlighten the jury as to what is a conspiracy. The court does not instruct the jury as to what is a fraud in fact or a fraud in law. The court does not instruct the jury as to what is evidence of fraud and what is not. The court does not instruct the jury as to the difference between evidence of fraud and suspicion of fraud; things necessary for the jury to know before searching after proof of fraud in a case like the present.

The duty imposed upon the court in charging the jury has been passed upon a number of times, not only by this court but by the Supreme Court, and we call attention to the following cases: Fullam v. Rose, 160 Pa. 47; Tietz v. Phila. Traction Co., 169 Pa. 516; Richards v. Willard, 176 Pa. 181.

"A charge is inadequate which fails to present to the con-

sideration of the jury just what the issue was, by a statement of the matter of fact upon which the case turned, and a clear statement of the rules of law applicable to the questions involved."

The charge now under consideration does not satisfy the above requirements.

*W. D. Patton*, for appellee.—The appellants have not complied with Rule XXIV. of this court. Their paper-book does not show the form of the action, or the issue, or how it was made. The pleadings are not printed, none of the record evidence is printed, and without them no court can understand the case.

We contend that the case was fairly submitted to the jury and that their finding should not be reversed.

The second and third assignments of error are to plaintiff's fourth and fifth points. That they are good law cannot be disputed. The bona fide purchaser of a chattel from a fraudulent vendee acquires a good title: Thompson v. Lee, 3 W. & S. 479.

A bona fide purchaser is protected whether he purchases from a fraudulent grantor or a fraudulent grantee: Hood v. Fahnestock, 8 Watts, 489.

A purchaser from a fraudulent grantee, without notice of the fraud, is protected: Mateer v. Hissim, 3 P. & W. 160; Price v. Junkin, 4 Watts, 85.

The fourth assignment of error is to the answer to plaintiff's sixth point. It is not enough to charge fraud and prove in support thereof slight circumstances of suspicion only. To be of any avail it must be clearly proved: Mead v. Conroe, 113 Pa. 220.

Fraud is a fact to be proved. It cannot be assumed. There was no proof of actual fraud in the case. There was at most a mere suspicion, and this was not sufficient to base a verdict: Walter v. Jones, 148 Pa. 589.

Fraud must be affirmatively shown; it will not be presumed; the presumption of innocence must prevail: Shoemaker v. Kunkle, 5 Watts, 107; Lutton v. Hesson, 18 Pa. 109; Bear's Est., 60 Pa. 430.

The husband joined in the note under the mistaken notion that the note of a married woman was not good unless he went

on it. This was exactly the case in Bollinger v. Gallagher, 170 Pa. 85, in which it was held the wife took a good 'title against her husband's creditors. Since the act of 1887, a married woman may engage in business or trade: Real Estate Co. v. Roop, 132 Pa. 496; Walter v. Jones, 148 Pa. 589.

OPINION BY RICE, P. J., October 10, 1898 :

All of the assignments of error relate to the charge and the answers to the plaintiff's points. The learned judge, after explaining to the jury the nature of the issue, and stating the title under which the plaintiff claimed, rehearsed the testimony of the witnesses on the one side and the other in great detail, and, so far as we can discover, with entire fairness and impartiality, and concluded his general charge with the instructions embraced in the first assignment of error. It is not claimed that these instructions contain anything erroneous, but the complaint is that they were inadequate. It is urged that the court ought to have analyzed the testimony and more fully explained to the jury its legal effect. An examination of the charge in connection with the answers to the points has failed to convince us that this complaint is well founded. The learned judge instructed the jury that the burden of proof rested on the plaintiff,—that the prima facie presumption was that the property belonged to her husband,—and presented prominently and distinctly the controlling questions of fact upon which the case turned and left the jury to determine them from all the evidence, both of a direct and a circumstantial nature, to the salient points of which he had called their attention. After reciting at considerable length the damaging declarations and admissions alleged to have been made by D. J. McCord, he reminded the jury that the latter had not been called to contradict this testimony and that under the undisputed testimony, John Wilson was not a creditor of D. J. McCord to the amount of the note the latter had given him upon which the property was sold. It is true he did not undertake to advise the jury as to the inference they ought to draw from this and other testimony of a similar nature to which he had called their attention and we cannot say that he ought to have done so under the circumstances. He submitted it to the jury in a manner which sufficiently indicated that it had an important bearing upon the controlling questions

of fact and left the jury to draw the inferences.   In an issue of this kind he could scarcely have gone further than he did without taking upon himself the duty of counsel and running the risk of coming to speak as an advocate rather than a judge; especially after affirming the defendants' points which so clearly and concisely presented their theory of the case.

A charge is inadequate, it has been held, which fails to present to the consideration of the jury just what the issue is, by a statement of the matters of fact upon which the case turns, and a clear statement of the rules of law applicable to the question involved.   This does not imply that the judge must give a dissertation upon the law, but only that he ought to present the case in such a way that the jury will know what conclusion arises under the law from the facts proved.   The extent to which the judge ought to go beyond that, depends upon the circumstances of the case and much must be left to his sound discretion.   Frequently the course taken by counsel in arguing to the jury may properly influence him in determining this matter, as well as others.   When no positive error in the charge can be pointed out, and the points of the party complaining have been unqualifiedly affirmed, it must be a very plain case to warrant us in reversing upon the ground that the court did not analyze the testimony, or did not sufficiently instruct the jury as to the rules for determining its value.   Such cases have arisen, as the reports show, but they are rare and we do not think this is one.   See Grantz v. Price, 130 Pa. 415; Com. v. Kaiser, 184 Pa. 493; Walton v. Caldwell, 5 Pa. Superior Ct. 143; Taylor v. Burrell, 7 Pa. Superior Ct. 461.

There was no error in the affirmance of the plaintiff's fourth, fifth and sixth points, coupled as it was with the explanatory instructions given in the answers.   The legal principle involved in the fourth and fifth points was recognized by the defendants in their points, and is sustained by the authorities cited by the plaintiff's counsel.   The rule as to the burden of proof on an allegation of fraud was not more strongly stated against the party making the allegation than was warranted by Mead v. Conroe, 113 Pa. 220, Walter v. Jones, 148 Pa. 589, and many other cases.   The second, third and fourth assignments are overruled.

The answer to the defendants' eighth point, as printed in the

paper-book seems to be confused, but, taking it in connection with the instructions given in the general charge, to which reference was made, the refusal of the three points which immediately followed, and the affirmance of the defendant's first point, we do not think the jury could have been misled. Taking these instructions as a whole the defendants, certainly, have no reason to complain of the judge's ruling as to the effect of the proceedings in the orphans' court. The fifth assignment is overruled. The sixth does not require particular notice.

The judgment is affirmed.