Wetherill Bros. *v.* Wm. H. Erwin and Joseph B. Wagener, trading as Erwin & Wagener Co., and Henry Erwin as Surety or Guarantor, Appellants.

*Evidence—Construction of oral and written evidence—Question for jury.*

When matters of fact depending on oral testimony are connected with and necessary to a proper understanding of the written evidence, the court is not bound to construe the latter as though it stood alone; an admission of oral and written evidence draws the whole to the jury.

*Charge of court—Adequate presentation.*

That a judge does not make all the remarks of which the nature of the case may admit is not invariably ground for reversal. If such were the rule few judgments would be affirmed, for there are few cases in which something in addition, that might have been appropriately said, could not be suggested.

If the trial judges were compelled to weigh their utterances, regarding the evidence, in the exquisitely balanced scales sometimes employed by ingenious counsel, to discover whether too much or too little has been said, few charges would stand the test. The only safe course would be to read the whole evidence word for word to the jury, or else carefully avoid mentioning it at all. WICKHAM, J., in Walton v. Caldwell, 5 Pa. Superior Ct. 143.

Argued Dec. 7, 1899. Appeal, No. 199, Oct. T., 1899, by defendants, from judgment of C. P. Northampton Co., July T., 1898, No. 73, on verdict for plaintiffs. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ, Affirmed. Opinion by RICE, P. J.

Assumpsit. Before SCOTT, J.

The pleadings were not printed in the paper-books.

The facts sufficiently appear from the charge of the court below, which is as follows:

The plaintiffs seek to recover from defendants the sum of $60.05, being a balance claimed by them to be due in consequence of a sale of white lead, made under a contract in 1897, wherein it is claimed by the plaintiffs that this balance remains unpaid, and the defendants claim that the whole obligation has been discharged by payments already made to the plaintiffs, by reason of the fact that under the terms of the contract there was to be a further rebate of one fourth of a cent a pound upon the amount of lead that was sold the defendants. The difference which is represented by that one fourth cent per pound is this balance of $60.05, so that if the defendants were not entitled to the additional rebate, under the terms of the contract, the plaintiffs would be entitled to recover the $60.05, with interest from the time there was a default in the contract, which would be at the time of the payment in January, 1898. If the plaintiffs are entitled to recover this money, and the defendants were not entitled to any other rebate than the discount that was allowed and for which settlement was made, then the plaintiffs would be entitled to recover $60.05, with interest from January 15, 1898, when the payment was made for $960.99, and when there was a further discount allowed which reduced the balance unpaid, according to the exact price stipulated for, to $60.05. The defendants deny the liability; if the plaintiffs are entitled to recover at all, they are entitled to recover from the time the payment was made on account of the contract, and liability denied for any of the remaining balance, that is, January 15, 1898.

It becomes necessary, therefore, to determine whether their contract, as of that time, provided for any additional rebate, or cut in the price, beyond the discount of two per cent, which is stipulated for upon this card expressly.

Sometime shortly prior to January 11, 1897, the plaintiffs mailed to the defendants a postal card, not directed to any one on the outside, but containing propositions and a price list, but, as it appears by the testimony, this price list was inclosed in another envelope directed to the defendants and received by them, and, therefore, this card becomes the proposition of the plaintiffs inviting the acceptance from the defendants on January 11, 1897, being probably a few days afterwards, because the card itself is dated January 1, 1897. The defendants wrote this letter which the plaintiffs claim is an acceptance of the terms of the contract,

and whether it be so or not is a matter for the court to determine.

" WETHERILL BROS.,

" Gentlemen: Your postal of quotations for 1897 received. You will please enter our contract for twelve tons white lead for 1897, to be shipped by way of the Central Railroad Company of New Jersey delivery. Have filed claim with railroad company as per your request.

" Yours truly,<br>
"ERWIN, WAGENER CO."

You will perceive, therefore, as the court instructs you, that that is an acceptance of the proposition made by the plaintiffs for the sale of any of these products that are described upon this postal card ; among those matters contained are that Wetherill Brothers will furnish white lead, dry, in casks and barrels, four and one fourth cents per pound. If there were nothing else in the contract but that, it would simply be a provision that the defendant agreed to accept the white lead—a carload of white lead, twelve tons for four and one fourth cents per pound, subject to the usual discounts that are named upon this postal card, and also discount of two per cent for cash if paid within fifteen days from the date of the invoice. Added to that, however, is a provision upon this card which is as follows: " Conditions as heretofore."

The interpretation of a contract which appears to be in writing is a matter exclusively for the court and not for a jury. When, however, part of a contract be in writing and part of it be verbal, the whole contract becomes what is called a parol contract, and the matter is for the jury under such instructions as may be given by the court.

[Now, upon this postal card it provides in addition to what is there printed, " Conditions as heretofore ; " of course, that does not mean any of the conditions that are printed upon this card for two reasons : if it did mean any of those conditions it would have been unnecessary to have said that, and as it says, " Conditions as heretofore," it refers to something that may have existed in the contractual relations of the parties prior to that time, and the defendant alleges that it was part of this contract made at that time in pursuance of the conditions therein ex-

pressed that it was made with reference to the conditions of a prior contract between these parties in 1896, and if that be so, then the questions of fact, arising out of this controversy, are to be determined by you.] [1]   It is undisputed that there was a prior contract in 1896, and that was the only contract, so far as any evidence here discloses, that ever existed between the plaintiffs and the defendants; therefore, the contract in 1897 must be interpreted by you with reference to the contract of 1896, by reason of the fact that the proposition is made with reference to " Conditions as heretofore," and the letter of acceptance refers to that postal card and accepts the proposition there made; therefore, it becomes of some importance to inquire whether there was such a provision in the contract of 1896 providing for the rebate of one fourth of a cent per pound, beyond the usual discount of two per cent.   The stipulated price under the contract of 1896, was four and one half instead of four and one fourth cents per pound for the white lead, and whether dry or in oil, I do not remember, but it is unimportant, for we are not trying the question of the liability upon the contract of 1896, but only referring to it for the purpose of ascertaining what the contract of 1897 was.

The amount that was to be paid per pound under the contract of 1896 is unimportant, for the amount that was to be paid under the contract of 1897 is expressly provided for in this proposition, which was accepted; it was to be four and one fourth cents per pound; that is one of the things expressly named here, and, therefore, any reference to the contract of 1896 under the clause of " Conditions as heretofore " has no reference at all to the amount that was to be paid per pound.   The only importance of referring to the contract of 1896 is to ascertain whether in addition to any of the stipulations upon this postal card there were conditions annexed to that contract which provided for an abatement of one fourth cent per pound, and, if so, in addition to the regular two per cent discount that is contracted for here, it is contended by the defendant that the contract then between the parties appears to have been one for an abatement or a cut of one fourth cent per pound beyond and below the two per cent discount on the four and one fourth cent per pound.   When this postal card stipulates that the conditions were as heretofore you will perceive it refers to what

the contract was before, not what may have been voluntarily performed upon the part of the plaintiffs, but what was the con‑ tract of 1896.

[It is claimed in the first place, by the plaintiffs, that the contract of 1896 was for the payment of four and one half cents a pound with the discount of two per cent for cash within the fifteen days, and there was no provision in that contract that the time it was accepted for any further rebate, and if that were so, although the rebate was allowed at some time subsequent in the year, by the plaintiffs upon application of the defendants, it was purely a voluntary act not supported by any consideration, and was not part of the contract at all that was made in 1896, and you are to ascertain in the first place how that thing is. It does not seem to be doubted, or disputed, that there was a re‑ bate made upon that contract of 1896 before all the lead had been supplied in pursuance of it, but it is said by the plaintiffs that it was not allowed until some time late in the year when some of the last shipments were being made, and after several pay‑ ments, or some payments, had been made in pursuance of that contract, and that it was done because the defendants called‑ their attention to the fact that in the trade to some persons at least there was such a rebate being allowed, and when their at‑ tention was called to it they allowed that rebate to the defend‑ ants. Have the plaintiffs satisfied you, or does the evidence sat‑ isfy you that that was the condition as claimed by the plaintiffs? If so, then it was not part of the contract of 1896 that there should be any rebate, but it was made in pursuance of the vol‑ untary act of the plaintiffs, and whether voluntary or not, would depend upon the question of whether there was an agreement subsequently made between these people before all that lead had been shipped under the contract of 1896, that if they would take the balance and pay for it they should be allowed that re‑ bate which is the contention of the defendants, and you are to say whether it is supported by any evidence; if it be not, and it is simply a matter of the ordinary contract to pay four and one half cents a pound in 1896, and it was a voluntary reduc‑ tion of that claim on the part of the plaintiffs, although it was made, and although there was the rebate made, yet it was not one of the conditions of the contract which is referred to in this postal card, and it would not be binding upon the plaintiffs un‑

less it were founded upon some consideration, and if that should be the fact, and you are satisfied of that, then there was no such condition in the contract of 1896, which would be conclusive upon the plaintiffs in this proceeding, and they would be entitled to recover the full amount of the contract price, $60.05, with interest from the date I have already specified, that would be for the reason that the only contract then would be a contract to pay a certain amount per pound without any rebate, because there were no conditions heretofore existing that provided for any rebate in a contract that was binding between these people. It was a voluntary act, and under the testimony of these witnesses upon both sides you are to say whether the other condition existed. There was a rebate, it is undisputable, · for 1896, and you are to say whether it was made in the way contended for by the plaintiffs, or in that contended for by the defendants. If you find upon that branch of the case in favor of the plaintiffs, then it is not necessary to go any further and consider the other question.] [2]

[The only other question of fact which arises in this case, important to your conclusion—to which I will refer you in a moment—if you are satisfied that the conclusion upon this proposition that I am submitting would be with the plaintiffs, then your verdict would be for the plaintiffs for the amount in controversy, but if you accept the contention made by the defendants upon this branch of the case, or you are not satisfied that the evidence for the plaintiffs establishes the condition of things to which I have referred, then it is necessary for you to consider the other proposition, which is, as claimed by the plaintiffs, that after this contract was made in January, 1897, providing that at any time during that year these twelve tons of lead might be taken by the defendants and paid for at that price ; that it was not ordered and not shipped until the 28th day of December of that year, although ordered on the 11th of January; that before it was shipped a controversy had arisen about the terms of payment, and, in pursuance of that controversy, Mr. Wallace, representing the plaintiffs, went to the defendants' place in Bethlehem, and after some discussion of that proposition agreed to ship this lead to the defendants to be paid for by them at the contract price named in this card, unless the defendants could furnish the plaintiffs either a letter

or something in writing to show that Mr. Wetherill, of the plaintiffs' firm had agreed to take one fourth of a cent rebate upon that contract. You have heard the testimony of Mr. Wallace upon what took place upon that occasion, asserting an agreement to that effect, and the testimony of Mr. Erwin and his son denying such agreement, Mr. Erwin not being a member of the firm. At that time, I have said, there had been no shipment or delivery of any part of this lead that had been ordered in January, and it had not been paid for, and, there being no evidence that it had been separated and set apart by the plaintiffs for the defendants before that time, it not having been paid for, it not having been delivered, no title had yet vested in the defendants to that lead. Whatever rights might arise by reason of a breach of contract is not the question that we are now trying; it is only referred to as evidence bearing upon what was the relation of these people at that time. It had not been furnished, and the contention of the plaintiffs upon this proposition is that it was not shipped upon the contract as claimed by the defendants now, and was only shipped in pursuance of an express agreement made at that time between him and William Erwin, in the presence of Henry Erwin, that it would be shipped to be paid for at four and one fourth cents per pound, unless the defendants were able to furnish a written paper—some paper in writing—that Mr. Wetherill had agreed to take four cents a pound, or a rebate of one fourth cent. The letter was not asked for, or produced that day.] [3] Mr. Wallace proceeded to return to Philadelphia, and after some correspondence Wetherill Brothers asked for that letter, or they asked for the date of the letter, so that they might refer to it in the copies they had kept; they were finally referred to the letter of January 12, 1897, marked as exhibit No. 8 in this case, which is as follows: "The Erwin, Wagener Co., Bethlehem, Pa., Dear Sirs: Your favor of the 11th instant is at hand, and we thank you for the order; have made a special entry of same for the year, and note your instructions regarding route of shipments." This letter is dated January 12, 1897, and the letter from Erwin Brothers is dated January 11, the preceding day, ordering shipment to be made according to the price list then inclosed. The letter thus proceeds: "The reason we say 'special' is that last month it was recommended that sales

be made at this price for delivery not later than March 31, and in case of an advance by or before then, buyers to take or pay present prices for what they wanted to secure, or regular terms from date of advance. This recommendation not having been fully adhered to, and in some cases ignored, we give you the benefit of the year's run."

[I have said that some part of this contract being in writing, and some part of it verbal, it all becomes a matter for the consideration of the jury to determine what the contract was.] [4]

[If it be found to have been the engagement of these parties later in the year, before any shipment, and in view of the fresh dispute about the price, that these goods should be shipped to the defendants for the usual price stipulated in this card, and that they were to be entitled to a rebate of the one fourth per cent, only in the event that they were able to furnish a letter, or some writing, from Mr. Wetherill agreeing to accept such rebate, and they were not able to do this, no further reduction would be admissible.] [5] I am not able to see that there is any recognition from Wetherill Brothers stated in this letter of January 12 that he would accept a rebate of one fourth cent per pound. However, other letters have been given in evidence by the defendants upon the trial of the case here, although this was the letter referred to the gentlemen in Philadelphia.

[It is the plaintiffs' contention that if the goods were shipped the defendants were to pay the regular listed price, unless they would be able to supply the plaintiffs with some previous undertaking of Mr. Wetherill to accept the rebate; then it would be part of the contract for the shipment, and the plaintiffs would be entitled to recover, unless you find that there is an undertaking by Mr. Wetherill that he would accept less. If the defendants assented to this, it would estop them from asserting the contrary afterwards.] [6]

[The questions of fact upon these two propositions are entirely for your consideration. If you find both of these contentions that I have stated in favor of the defendants, your verdict will be in favor of the defendants; if you find either one of them in favor of the plaintiffs, your verdict will be in favor of the plaintiffs. There is no dispute about the amount as $60.05; the plaintiffs must satisfy you, however, of their right to recover, by weight of the evidence.] [7]

[The defendants submit this letter of January 20, 1896, to you, gentlemen of the jury, as bearing upon the question of what the contract was in 1896.   I have already said we are not trying the question of liability under the contract of 1896, but I have referred you to the fact that it becomes important to ascertain what the contract of 1896 was, in the way of an abatement that was allowed, at that time; the defendants claim it was contracted for, and the plaintiffs deny it.

This is a letter from Wetherill Brothers to the Erwin, Wagener Company, Bethlehem.  "Your favor of this date is at hand, and we would book your order for dry white lead at four and one half cents per pound, and on delivery during the year of a quantity equal to a carload would allow a rebate on same of one fourth cent per pound.   Terms sixty days credit, or two per cent discount for cash if paid within fifteen days from date of invoice, and delivery f. o. b. the cars."

I have said that it is necessary to determine whether there was a rebate allowed as part of the contract of 1896, and you will remember what I have said upon that question.   When it is stipulated in this postal card that the conditions are as heretofore it refers to the conditions of a contract, and not what the plaintiff may have voluntarily done.   The defendant asked me to read this letter to you as showing that it was part of the contract of 1896 that there should be this rebate, and thus being part of the contract of 1896 should be also included as that of 1897.   After that explanation perhaps I had better read the letter again so that you will perceive what point it is addressed to.   "Your favor this date is at hand and we would book your order for dry lead at four and one half cents per pound, and on delivery during the year of a quantity equal to a carload would allow a rebate on same of one fourth cent per pound."   That is dated January 20, 1896, and, of course, refers to the contract of 1896.] [8]

Verdict and judgment for plaintiffs for $61.75.   Defendants appealed.

*Errors assigned* were (1–8) to portions of the judge's charge, reciting same.

*Harry C. Cope,* with him *J. B. Kemerer,* for appellants.—

There is but very little law necessary to be cited in this case as it now appears before this court, as the principles involved are well settled and not open to question.  We will cite but a few of the more recent cases.

" Slight inaccuracies in reviewing the evidence will not be regarded as error, but if the charge of the court is in the nature of an argument on one side, or is inadequate in its treatment of the question submitted, such defect will be ground for reversal: " Fineburg v. Ry. Co., 182 Pa. 97; Reichenbach v. Ruddach, 127 Pa. 564; Tietz v. Traction Co., 169 Pa. 516; Lerch v. Bard, 177 Pa. 197.

If this court should decide that the judgment be reversed, and that there was nothing in the case to submit to a jury, defendants respectfully ask that this court exercise its powers under the Act of May 20, 1891, P. L. 101.

*J. Davis Brodhead,* for appellees.—From the statement and the answer, this court could see at a glance the exact issue involved.  But the appellants fail to give a copy of the statement, or of the answer, or of the replication; they fail even to mention these all important pleadings in their abstract of proceedings, excepting the replication.

Every material averment in the statement, not denied by the answer, will be taken as admitted.

The defendants cannot set up any new defense not found in their answer: Ashman v. Weigley, 148 Pa. 61; Carpet Co. v. Latimer, 165 Pa. 617.

The word " condition " does not mean terms, price and rebates.  Even if the words " Conditions as heretofore " did refer to the terms of the contract of 1896, then we say that the contract of 1896 never contemplated any rebate of one fourth of a cent for dry white lead, the subject of this action.

In the absence of plaintiffs' statement, this court cannot say exactly upon what contracts plaintiffs founded their action.

The second assignment of error is that the court erred in telling the jury what the plaintiffs' claim was.  Our claim was just as the court stated it, and as the jury found.

It was right to submit our claim as set forth in our statement to the jury.  Appellants say that they introduced the evidence on the subject-matter contained in this assignment,

and that it was not introduced to prove the plaintiffs' case.  Of course we do not know what purpose the defendants had in introducing this evidence, but the result was that it did prove the plaintiffs' case and the jury so found.

OPINION BY RICE, P. J., January 17, 1900:

1. The plaintiffs' general price list for the year 1896, sent out to their customers, contained a clause stating that a rebate of one fourth cent per pound would be allowed on purchases of twelve tons or over of "pure white lead in oil," but offered no rebate on purchases of "dry white lead." Their price list for the year 1897, after quoting the prices and stating the discounts that would be allowed, contained the clause, out of which this litigation has arisen: "Conditions as heretofore." The question whether the defendants were entitled to a rebate on purchases of "dry white lead" in 1897 would be a very simple one if the evidence upon the subject had closed here. It would have been the plain duty of the court to instruct the jury that the words, "conditions as heretofore," referred to the conditions expressed in the price list of 1896, and that under them a rebate could not be claimed on purchases of "dry white lead." But on January 20, 1896, the plaintiffs wrote to the defendants, in reply to a previous communication from the latter, evidently containing an order: "We would book your order for dry white lead at four and one half cents per pound, and on delivery during the year of a quantity equal to a carload would allow a rebate on same of one fourth cent per pound. . . . Trusting we may be favored with your order," etc. It is to be noticed that this letter was not an acceptance of an offer previously made by the defendants, but an offer which called for a reply. Whether or not any written reply was made to it does not appear. Standing alone, it did not make a binding contract. Whether or not it was accepted, and the "dry white lead" shipped in 1896 was delivered pursuant to the contract thus made, depended upon the credit to be given to the oral testimony, and the inferences to be drawn therefrom by the jury. Undoubtedly they might have found the fact, but it would have been a clear usurpation of their functions for the court to assume it and base on this assumption binding instructions that the words, "Conditions as heretofore," in the price list of 1897, referred to the condi-

tions expressed in the letter of January 20, 1896. If there was a contract in 1896 binding the plaintiffs to allow a rebate upon certain conditions, it may be assumed for present purposes that the words in the contract of 1897 referred to those conditions. If, however, there was no such contract, and the allowance of the rebate in the final settlement for the dry white lead delivered in 1896 was purely voluntary, the only reasonable construction of the words is, that they refer to the conditions expressed in the price list of 1896. " When matters of fact, depending on oral testimony, are connected with and necessary to a proper understanding of the written evidence, the court is not bound to construe the latter as though it stood alone. An admixture of oral and written evidence draws the whole to the jury: Denison v. Wertz, 7 S. & R. 372; Sidwell v. Evans, 1 P. & W. 383; McGee v. Northumberland Bank, 5 W. 32;" Home B. & L. Assn. v. Kilpatrick, 140 Pa. 405; Organ Co. v. McManigal, 8 Pa. Superior Ct. 632. This was such a case. A knowledge of facts outside the writing itself was necessary to a proper understanding of the words, " conditions as heretofore," and as these matters of fact depended on oral testimony there was no error in submitting the whole evidence to the jury under proper instructions as to the legal effect of the writing, if they found the facts as claimed by the defendants.

2. We are not convinced that the instructions complained of in the fifth and sixth assignments were erroneous. Of the numerous objections urged against them the only one that requires notice is that relating to the consideration. It must be conceded that the decisions of the courts of the several states upon the subject of the performance of an existing contract obligation as consideration for a new promise are not harmonious, as an examination of the cases cited in the opinion in Abbott v. Doane, 163 Mass. 433, and in the notes thereto in 34 L. R. A. 33, will show. But it seems to me unnecessary to go into a discussion of that question in the present case. The compromise, in good faith, of a doubtful right, is a sufficient consideration to support a promise. Here the contract was executory, it was ambiguous in its terms, and there was an honest difference of opinion, and a dispute between the parties as to the right of the defendants to a rebate on purchases of " dry white

lead." The right was doubtful and disputed. We see no good reason in law or in morals why they might not make an agreement that the dispute should be decided in the way described, nor why, if performance was made on the faith of the agreement, the defendants should not be bound by it. The questions of fact involved in this proposition including the questions as to the authority of the plaintiffs' agent and their ratification of his act were for the jury; we discover no error in the ruling upon the question of law.

3. Nor can we say that in presenting the question the court gave undue prominence to the plaintiffs' evidence bearing on it and not sufficient prominence to that of the defendants'. We need not dwell on this assignment. The case does not come within the doctrine or the ruling of any of the cases cited in support of it. In this connection it seems not out of place to call attention to the remarks of Judge WICKHAM at the conclusion of his opinion in Walton v. Caldwell, 5 Pa. Superior Ct. 143, also to the cases cited in the opinion in McCord v. Whitacre, 8 Pa. Superior Ct. 277.

4. The defendants complain that in submitting the case to the jury the court did not correctly state to them the respective contentions of the parties. But as he has not printed the pleadings we have no means of ascertaining whether this complaint is well founded or not, except by an examination of the evidence. This has failed to convince us that the court committed error in this regard. There was, it is true, an oversight in not calling the jury's attention to the letter of January 20, 1896, when the court was stating in the first instance the position of the defendants as to the transactions of that year, and the evidence which tended to support them in the contention that there was a binding contract for the allowance of a rebate. This omission, however, was cured before the jury retired. The letter was read to them twice, and its bearing on the question was stated. The learned judge also told the jury that the defendants contended that the letter shows " that it was part of the contract of 1896 that there should be this rebate, and thus being part of the contract of 1896 should also be included in that of 1897." He stated the defendants' position correctly, and construed as a whole the charge was not inadequate. That a judge does not make all the remarks of which the nature of

the case may admit is not invariably ground for reversal. If such were the rule few judgments would be affirmed, for there are few cases in which something in addition, that might have been appropriately said, could not be suggested.

Further or more particular discussion of the several assignments of error seems unnecessary. They are all overruled, and the judgment is affirmed.