## Grasselli Chemical Company v. Biddle Purchasing Company, Appellant.

*Principal and agent—Revocation of agency—Notice.*

Where an agent properly authorized, has in the course of business bought goods for his principal, a person in the habit of dealing with the agent may take an order from him and fill it, and bind the principal after the revocation of the agency, if he has received no notice of such revocation.

Where one of two persons must suffer by the act of a third person, he who has held that person out as having authority in the matter should be bound by it.

Argued Dec. 13, 1902. Appeal, No. 217, Oct. T., 1902, by defendant, from judgment of C. P. No. 4, Philadelphia County, March T, 1899, No. 49, on verdict for plaintiff in case of Grasselli Chemical Company v. Biddle Purchasing Company. Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before AUDENRIED, J.

At the trial it appeared that the goods were ordered by M. W. Boley, who had been agent for the defendant. The defendant claimed that the goods were ordered after Boley's agency had been revoked.

Plaintiff averred that they had received no notice of the revocation.

There was evidence that the United States Wire & Nail Company had succeeded to the business of the defendant, and had received the goods.

When Boley was on the stand he was asked this question:

"Q. In pursuance of that instruction, you may state what you did with reference to purchasing acid from the Grasselli Chemical Company for the use of the United States Wire & Nail Company."

Objection by defendant. Objection overruled. Exception noted for defendant. [1]

"A. I ordered acid thereafter over the name of the Biddle Purchasing Company, same as we did before. Q. You may state what that conversation was."

Objection by defendant. Objection overruled. Exception noted for defendant. [2]

"A. Well, I don't really know what you mean. Mr. Whiting asked me who the United States Wire & Nail Company were, and I told him that to the best of my knowledge they were the same people that owned it before, or, rather, the same people who operated 694 Broadway before."

Whiting, plaintiff's salesman, was asked this question:

"Q. Now wont you state the circumstances under which you came to sell the first bill after July 1, 1898 ? A. I cannot say whether it was the first bill or the second bill, but some time after July 1, 1898, the office-boy brought me an order for the United States Wire & Nail Company, to approve. I did not know who they were. I went to the telephone myself and said, 'Who is this?'"

Objection by the defendant, unless it is shown that this conversation referred to was with an agent of the Biddle Purchasing Company. Objection overruled. Exception noted for defendant. [3]

"A. (Continued) He said, 'Boley.' I said, 'You just gave me this order for the United States Wire & Nail Company.'"

He said, 'I did.' I said, 'Well, I don't know anything about the United States Wire & Nail Company, and I refuse to send the goods to the United States Wire & Nail Company. I do not know them.' His answer was, 'It is the Biddle Purchasing Company.' Then I asked him further about it, and he said they had merely changed their name, operating there under the name of United States Wire & Nail Company, as the Biddle Purchasing Company was not a good name to sell goods under, and the concern was the same as the Biddle Purchasing Company, and for me to charge the goods to the Biddle Purchasing Company. I said, 'All right, Mr. Boley, if this is the Biddle Purchasing Company, I will send out the goods.' He said, 'Well, it is, and you can send your invoices just the same to the Biddle Purchasing Company.' We then continued to send the goods to the Biddle Purchasing Company and sent the invoices to them."

The court charged as follows:

[Whiting, the salesman of the plaintiff, says, "I sold these goods to be delivered at a place where the business of making nails was carried on by Mr. Biddle, or under the management of Mr. Biddle, the father of the Biddle who was the president of the defendant company, under the order of Boley, who represented to me that he was the agent of the defendant company." Boley says, "That is true; I had a talk with Mr. Whiting, and told him that the Biddle Purchasing Company wanted the sulphuric acid delivered at this factory, and that he should make the delivery and charge the sulphuric acid to that company."] [4]

The defendants in their argument claimed that Whiting made no reference whatever in his testimony to a Mr. Biddle.

Verdict and judgment for plaintiff for $1,033.12. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (4) portion of charge as above, quoting it.

*Henry Spalding*, with him *David N. Fell, Jr.*, for appellant.

*George Wentworth Carr*, for appellee.

OPINION BY ORLADY, J., March 12, 1903:

The plaintiff delivered to the defendant certain merchandise which the appellant admits was ordered by the person who had been the defendant's authorized representative in former dealings between the parties, and that no formal notice had been given to the plaintiff of the termination of that authority.

" The rule so vigorously contended for by the appellant, that those dealing with an agent are bound to look to his authority, is freely conceded, but this case falls within the equally established rule that those clothing an agent with apparent authority, are, as to parties dealing on the faith of such authority, conclusively estopped from denying it: " Hubbard v. Tenbrook, 23 W. N. C. 351.

An agreement by an agent in the course of the business entrusted to him is binding on the principal although in excess of his instructions (Adams Express Co. v. Schlessinger, 75 Pa. 246), and notwithstanding the agent acted contrary to instructions. Where one of two persons must suffer by the act of a third person, he who has held that person out as having authority in the matter should be bound by it: Brooke v. New York, etc., Railroad Co., 108 Pa. 529; McNeile v. Cridland, 168 Pa. 16 ; Robb v. Penna. Co., 3 Pa. Superior Ct. 254 ; s. c., 186 Pa. 456.

The course of business pursued by the defendants in their dealings with the plaintiff imposed a duty which required that direct notice be given of the revocation or modification of the agent's authority. The verdict of the jury determines that this was not done, consequently the defendants must pay for the lack of proper supervision of their business. The testimony of which complaint is made in the first three assignments of error was competent in order to show the manner in which the business was managed. The credibility of the witness was for the jury, and the extent of his authority in giving the orders for materials was properly submitted. The attention of the trial judge was not called to the alleged error of the name of the witness as urged in the fourth assignment. Had this been done, the error, if error it was, could have been corrected at that time. The fact testified to was the import and matter, and not the name of the witness. Such an error would not warrant the reversal of a judgment when it is correct in all other re-

spects: Knapp v. Griffin, 140 Pa. 604; Walton v. Caldwell, 5 Pa. Superior Ct. 143; Wetherill v. Erwin, 12 Pa. Superior Ct. 259; Commonwealth v. Kay, 14 Pa. Superior Ct. 376.

The judgment is affirmed.