Span *v.* John Baizley Iron Works et al., Appellants.

Argued November 27, 1928.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Charles A. Wolfe,* with him *Robert T. McCracken,* for appellants.—The rights, liabilities and remedies of persons engaged in the performance of repairs on vessels lying in navigable waters are determined by maritime law and are subject only to the jurisdiction of the admiralty courts: The Robert W. Parsons, 191 U. S. 17; Robins Dry Dock Repair Co. v. Dahl, 266 U. S. 449; New Bedford Dry Dock Co. v. Purdy, 258 U. S. 96.

The workmen's compensation board has no jurisdiction over a claim based on injuries sustained on board a vessel undergoing repairs while tied to a pier in navigable waters: Southern Pac. Co. v. Jensen, 244 U. S. 205; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149; State Industrial Com. v. Nordenholt Corp., 259 U. S. 263; Grant Smith-Porters Co. v. Rohde, 257 U. S. 469; Thames Co. v. McDonald, 254 U. S. 242; Jordan v. Frederick Leyland & Co., 7 Fed., 2d ed., 386; Great Lakes D. & D. Co. v. Kierejewski, 261 U. S. 479; Gonsalves v. Dry D. & Repair Co., 266 U. S. 171; Jensen v. Warren & MacDonald, 3 Pa. D. & C. 765.

*Samuel Moyerman,* with him *J. Jerome Katz,* for appellee.—A state compensation can apply to maritime cases where the doctrine of uniformity of the maritime law is not disturbed: Cooley v. Board of Wardens, 53 U. S. 299; Olsen v. Smith, 195 U. S. 332; Sherlock v. Alling, 93 U. S. 99; Cummings v. Chicago, 188 U. S. 410; St. Anthony Co. v. Com'rs., 168 U. S. 349; Sands v. Imp. Co., 123 U. S. 288; Huse v. Glover, 119 U. S. 543; Port Richmond & B. P. Ferry Co. v. Free Holders, 234 U. S. 317; Industrial Com. v. Nordenholt Co., 259 U. S. 263; Alaska P. Assn. v. Industrial Com., 276 U. S. 467.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 7, 1929:

Abraham Span claimed under the Pennsylvania Workmen's Compensation Law, Act of June 2, 1915, P. L. 736, as amended by the Act of June 26, 1919, P. L. 642,

for an accidental injury which happened to him on January 13, 1926; he obtained an award, which was approved by the compensation board, affirmed by the court of common pleas, and, on appeal, by the Superior Court; the case is before us on appeal by defendants from the judgment of the last mentioned tribunal.

For purposes of the present appeal, the parties have agreed upon a statement of facts under Rule 56 of this court, which provides that they "may substitute an agreed statement of facts for all or any part of the evidence, and print it in lieu thereof." This statement is as follows: "The claimant, Abraham Span, was at the time of the injuries in question, on January 13, 1926, a resident of Philadelphia and employed at Philadelphia by defendant, the John Baizley Iron Works. The defendant was engaged in performing certain repairs to the steamship Bald Hill, at Philadelphia, including, inter alia, the painting of the engine room and repairs to its floor. The said vessel had prior thereto steamed to Philadelphia for necessary repairs, and at the time of the alleged accident was tied up to Pier 98 South in the Delaware River. The claimant, in the course of his aforesaid employment by the defendant, was painting angle irons in the engine room of the vessel. Sparks from an acetylene torch, being used by a fellow employee working near claimant, entered the claimant's eyes and caused the injuries resulting in the alleged disability of the claimant." It will be noticed that there is nothing here to show that the scope of Span's general employment contemplated maritime work or that his injury resulted from a tortious act on the part of his employer or any one else.

The above recital of facts covers all the findings of the compensation authorities except a statement by the referee that the boat on which Span met his injuries was at the time "out of commerce and laid up for repairs." Appellants have no fault to find with the statement that the boat was laid up for repairs, but say correctly: "The

referee's statement that the vessel was out of commerce is in itself inconsistent with the finding that the vessel 'had steamed to Philadelphia to have certain repairs made.'" Under the circumstances here shown, the ship was not, *in a legal sense,* out of commerce so as to deprive admiralty of its general jurisdiction in the premises: The Robert W. Parsons, 191 U. S. 17; The Steamship Jefferson, 215 U. S. 130, 141, 142-3; Clyde Steamship Co. v. Walker, 244 U. S. 255, 256-7; Gonsalves v. Morse D. D. & R. Co., 266 U. S. 171, 172.

The principal question involved is, Can this claimant take advantage of our state compensation law, or is his claim cognizable exclusively under the maritime law?

In a rather extensive research, we have particularly studied those opinions of the Supreme Court of the United States, from Southern Pacific Co. v. Jensen, 244 U. S. 205, to Northern Coal & Dock Co. v. Strand, 49 Pa. Sup. Ct. 88, which pass upon questions concerning injured workers, whose labor was to some degree associated with shipping, but who were not actual members of a ship's crew,—that is, whose activities were not of a nature to make them constantly subject to maritime law; for, in such opinions it seems to us, must be found the principles that control the present case. We shall mention all and discuss most of them during the course of this opinion.

While, possibly, some of the authorities which we intend to consider are not strictly within either of the classes about to be named, the cases, speaking broadly, fall into two general groups: (1) those involving injuries to stevedores and others whose occupation directly depended on navigation or commerce (this group we shall call "stevedore cases"), and (2) those involving injuries to workers, such as mechanics, whose occupation did not necessarily depend on navigation or commerce, but who, when injured, were making repairs to ships in navigable waters (this group we shall call "repair cases"). The latter class will be taken up first.

In Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U. S. 479, the injured man having died, the question was, could there be a recovery under the maritime law, as supplemented by a local statute giving a right to recover in death cases, when that right did not exist in admiralty? Claimant's husband, a boilermaker, was killed while repairing a scow in navigable waters, through the negligence of the Dredge & Dock Co., his employer. His widow recovered damages in a district court, judgment was entered in her favor, and the employer appealed to the United States Supreme Court. In affirming, the Supreme Court said that Kierejewski was killed "while performing maritime service to a completed vessel afloat ......upon navigable waters, as the result of a tort there committed"; and that "the rules of the maritime law, supplemented by the local death statute, applied and fixed the legal rights and liabilities of the parties." Thus, the local law was allowed application to the extent indicated.

The next case, Gonsalves v. Morse Dry Dock & Repair Co., 266 U. S. 171, also came to the Supreme Court on appeal from a judgment of a federal district court, entered in an admiralty proceeding. Gonsalves, while working for the defendant dock company, making repairs on board a ship in a floating dock on navigable waters, was injured "through the explosion of a blau torch" which the employer negligently permitted to be out of repair. The court below, apparently viewing the facts as presenting a land case, refused relief on the ground that it had no jurisdiction. The Supreme Court reversed, holding that "repairs to a vessel while in ordinary dry dock were not made on land"; that claimant's injury was sustained through a tort "committed and effective on navigable waters," and therefore admiralty had jurisdiction. So far as the report of the case shows, there was no question of the work which Gonsalves was doing at the time of his injury bearing direct relation to

navigation, or, as here, of the maritime law being affected by a local Workmen's Compensation Act.

Robins Dry Dock & Repair Co. v. Dahl, 266 U. S. 449, came to the Supreme Court of the United States on appeal from a judgment of a state court of New York, entered in a common law action to recover damages for personal injuries, received by Dahl in the course of his employment with the Dry Dock Co., caused by the breaking down of "a plant scaffold on which he was...... standing," while engaged in "repair work" on a steamer, *belonging to his employer,* "lying in navigable waters." The complaint was that his employer failed to furnish him with a safe place in which to work. A judgment in favor of the injured man was reversed because the jury had been instructed that, in deciding whether the employer was negligent, it might consider the provisions of a local statute regulating the construction of scaffolds. The Supreme Court said (p. 457) : "The alleged tort was maritime, suffered by one doing repair work on board a completed vessel [in navigable waters]. The matter was not of mere local concern......but had direct relation to navigation and commerce...... The rights and liabilities of the parties arose out of and depended upon the general maritime law and could not be enlarged or impaired by the state statute."

In the last of the four repair cases, Messel v. Foundation Co., 274 U. S. 427, plaintiff sued in a state court of Louisiana to recover damages for personal injuries suffered while in the employ of defendant company, which was engaged in shipbuilding and ship repairing. At the time of the accident, claimant was engaged in the work of adding to the height of a smokestack on board one of defendant's ships, when steam, negligently allowed to escape, seriously injured him. Messel claimed to recover under a certain article of the Civil Code of Louisiana, and also, as an alternative, under the Workmen's Compensation Act of that state, if it could constitutionally apply. The state court held that neither of

these remedies was available to plaintiff. On appeal, the Supreme Court of the United States reversed and held that, though, on the facts involved, the workmen's compensation law of Louisiana could have no application, yet claimant might sue under the state Civil Code, and that such suit would be governed by principles applicable to the admiralty law, written and unwritten, of the United States; in short, that, under the circumstances, the admiralty law of the United States might be enforced by a civil suit in the courts of Louisiana.

The general nature of the case at bar brings it within the repair group, but, as we proceed, it will be seen that this case differs, in certain more or less material particulars, from those previously decided by the United States Supreme Court.

For the present, it is enough to note that the record now before us does not show any contract of general employment between plaintiff and defendant Iron Works, nor suggest that Span was originally engaged to work. on, in or about ships. Apparently he was a land man, under a land contract of employment, who happened to be injured on a ship while doing work of a nature which had no direct relation to navigation or commerce; whereas, in each of the four cases just reviewed, the injured person was employed by a concern directly, and apparently exclusively, engaged in maritime work, and the records there involved indicate or strongly suggest that his original employment contemplated work having some direct relation to navigation or commerce.

In one of the four cases above mentioned, and in some others to be mentioned, when determining whether the injured person's rights could be affected by a local statute, the terms of his contract of general employment were considered: see Southern Pacific Co. v. Jensen, 244 U. S. 205, 217; Grant Smith-Porters Co. v. Rohde, 257 U. S. 469, 475-6; Industrial Commission v. Nordenholt Corp., 259 U. S. 263, 276; Great Lakes, etc., Co. v. Kierejewski, supra, 480; Alaska Packers' Assn. v. In-

dustrial, etc., Commission, 276 U. S. 467; Northern, etc., Co. v. Strand, 49 Sup. Ct. 88. The terms of such a contract do not, however, control the question of whether work being done at a particular moment was of a maritime nature; on that point, the test is, Was the employer, against whom the claim for damages is made, engaged in a maritime undertaking at the time of the injury? If he was thus engaged, so was the injured employee (Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 61-2); though that fact, we think the federal authorities indicate, does not of itself bar the latter from claiming the benefits of a local law.

The four decisions of the Supreme Court of the United States discussed above, and other federal cases, denote that repairing a completed vessel lying in navigable waters may be accounted part of the maintenance of the boat and hence a maritime act (see also Trainer v. The Boat Superior, 1 Gilpin's Reports 514, 516); but the mere fact that, at the moment of his injury, one was engaged in performing services which might properly be classed as "maritime in character" is not the final test as to exclusiveness of maritime jurisdiction to adjudge rights growing out of the situation: Sultan Ry., etc., Co. v. Dept. of Labor, 72 L. Ed. 559, 560. We shall show, later on (after first explaining our understanding of what we have called the Stevedore Cases, supra), that recent opinions written by the United States Supreme Court lay down additional tests. These are: (1) Had the injured person's activities at the time of the accident "direct relation to navigation or commerce"? (2) Under the circumstances of the particular case, would "the regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule,......necessarily work material prejudice to any characteristic feature of the general maritime law or interfere with [its] proper harmony or uniformity"? As we understand the relevant opinions, if a reasonable view of the facts involved in any particular

case warrants a negative answer to the above questions, admiralty will yield to local law, even though such law be a workmen's compensation statute.

In reading the cases of injuries to stevedores, longshoremen, and others doing approximately like work, it must be constantly remembered that men following such occupations are looked upon by the federal authorities as largely entitled to the protection afforded seamen (Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 62; International Stevedoring Co. v. Haverty, 272 U. S. 50, 52), attached to the boat on which they labor; and, therefore, when they work on a ship in navigable waters, their labor is accounted as bearing direct relation to navigation and commerce. As previously noted, the decisions in such cases may be classed by themselves; they do not govern a controversy like the one now before us, involving injury to a mechanic (not a seaman, nor otherwise directly connected with navigation) employed by a third party (who, so far as the record shows, was not the owner or operator of the ship on which the accident occurred, nor generally engaged in a business dependent upon maritime work), where plaintiff was injured, while painting an interior room of a vessel on navigable waters, by sparks flying from an acetylene torch in the hands of another employee of the third party (the latter employee also, so far as the record shows, not being a seaman nor otherwise directly connected with navigation).

While none of the decisions already mentioned, nor any of those we are about to discuss, rules the case before us, yet the opinions in many of them contain, as will be shown, enlightening judicial utterances, in which, we think, may be found the key to the present situation.

Southern Pacific Co. v. Jensen, 244 U. S. 205, was a stevedore case. It was there decided that one injured while following such a maritime occupation, upon a ship in navigable waters, was not entitled to the benefits of a state workmen's compensation act; that his remedy

was exclusively in admiralty. This decision has been followed in all subsequent stevedore and like cases where the injury happened on board a ship in navigable waters. See Clyde S. S. Co. v. Walker, 244 U. S. 255, 257; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 155, 157-9; Washington v. Dawson, 264 U. S. 219, 227-8; Northern Coal & Dock Co. v. Strand, supra. On the other hand, where men working at such employments are injured on shore, even though they may be performing work in connection with the unloading of a ship, the local law applies rather than the maritime. See State Industrial Commission v. Nordenholt Corp., 259 U. S. 263; Smith v. Taylor, 276 U. S. 179.

In State Industrial Com. v. Nordenholt Corp., supra, (a longshoreman case where the injury happened on a dock, and the state compensation law was allowed to apply), the United States Supreme Court, in the course of its opinion, said (pp. 272-3), in a general way, that, "When an employee working on board a vessel in navigable waters, sustains personal injuries and seeks damages from the employer,......the liability of the employer must be determined under the maritime law. ......The liability of the employer for damages on account of injuries received on shipboard by an employee under a maritime contract is matter within the admiralty jurisdiction." At first glance this judicial utterance may appear to mean that, whenever an employee of any kind, doing any sort of work on board a vessel in navigable waters, sustains injuries, the employer's liability will be determined under maritime law; but the last part of the quotation and the rule that everything said in an opinion must be read in the light of the facts in the case, show, we think, the court's meaning to be that, wherever an employee, working at a maritime pursuit, or, in the words of the opinion, under a "maritime contract,"—that is, at some work which has direct relation to navigation and commerce,—suffers an injury on shipboard, the maritime law applies; not that wher-

ever any employee, doing any kind of work under any sort of a contract, is injured on shipboard, the maritime law must apply, simply because the injury occurred there.

Again, in Smith v. Taylor, 276 U. S. 179, another stevedore case where the injury occurred on a wharf,— an extension of the land,—the Supreme Court, in the course of its opinion, states: "If the cause of action arose upon the river [a navigable stream], the rights of the parties are controlled by maritime law." Here again the passage in question must be read in connection with the facts of the particular case; and, when so read, it does not mean that every cause of action which arises upon navigable water is controlled by maritime law. Though it does seem to mean that injuries happening on land, even where the injured stevedore is engaged in what might be accounted maritime work, under a maritime contract, may be accounted local and subject to the land law rather than maritime law.

As previously noted, there is a doctrine, announced in recent opinions of the United States Supreme Court, to the effect that "state statutes providing compensation" for injured employees may "be treated as amending or modifying the maritime law in cases where they concern purely local matters and occasion no interference with the uniformity of such law in its international and interstate relations": Northern Coal & Dock Co. v. Strand, supra, and authorities there cited. In Alaska Packers' Assn. v. Industrial Commission, 276 U. S. 467, the Supreme Court said that, "Whether in any possible view the circumstances disclose a cause within the admiralty jurisdiction," was not the question for determination. Equally, in a case like the present it is not necessary to determine whether admiralty could have jurisdiction, but only whether or not the Pennsylvania act can apply notwithstanding general admiralty jurisdiction; or, in other words, whether plaintiff, when injured, was "engaged in any work so directly connected

with navigation and commerce that to permit the rights of the parties to be controlled by local law would interfere with the essential uniformity of the general maritime law": Alaska Case, supra. The point, however, is to find some logical method of classifying cases so as to determine which of them "concern purely local matters and occasion no interference with the uniformity of maritime law," and which, on the other hand, concern more than purely local matters.

In Chelentis v. Luckenback S. S. Co., 247 U. S. 372, a fireman, injured on board a ship at sea, instituted a common law action in a state court to recover "full indemnity for damages sustained." The case was removed to a United States district court because of diverse citizenship. It was there decided that no such recovery could be had, and in affirming, on appeal, the United States Supreme Court said (p. 382) : "Under the doctrine approved in Southern Pacific Co. v. Jensen, no state has power to abolish the well recognized maritime rule concerning the measure of recovery and substitute therefor the full indemnity rule of the common law. Such a substitution would distinctly and definitely change or add to the settled maritime law and would be destructive of the uniformity and consistency at which the Constitution aimed."

The case mentioned at the head of the immediately preceding paragraph and others following immediately hereafter are inserted at this stage of the opinion because they contain expressed views showing when the application of a state law will be allowed in the field of admiralty, as not occasioning any undue interference with the uniformity of the maritime law, and when it will not; but in reading the Chelentis Case it must be remembered that, unlike the one at bar, it is not one of those dealing with an injury to a laborer on shipboard, who was unconnected with the boat in any permanent sense and who, at the time of his injury, was engaged in work only remotely relating to navigation or commerce; there

the claimant was attached to the boat on which he was hurt, his contract of employment was strictly maritime, and he was injured when performing services of a nature relating directly to navigation; so, under all the authorities, he was confined to admiralty relief.

In Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, Stewart, who was employed as a bargeman and "doing work of a [strict] maritime nature," fell into the Hudson River and was drowned. His widow received an award under the local workmen's compensation law, which award was approved by the state courts, on the theory that a recently passed Act of Congress, "to save to claimants the rights and remedies under the workmen's compensation law of any state," had in effect overruled the Jensen Case. The United States Supreme Court reversed, remanding the record for further proceedings not inconsistent with its opinion. It held the act in question to be unconstitutional, saying, at page 163, that Congress undertook to permit application generally of "workmen's compensation laws of the several states to injuries within the admiralty......jurisdiction, and to save such statutes from the objections pointed out by Southern Pacific Co. v. Jensen"; that this was beyond its power under the Constitution, adding, at page 164, "To say that, because Congress could have enacted a compensation act applicable to maritime injuries, it could authorize the states to do so as they might desire, is false reasoning...... Such an authorization would inevitably destroy the harmony and uniformity which the Constitution not only contemplated but actually established...... Congress cannot transfer its legislative power to the states."

Western Fuel Co. v. Garcia, 257 U. S. 233, came to the Supreme Court of the United States from a federal circuit court. The case involved a claim for the death of a stevedore killed while doing maritime work in San Francisco Bay. The Supreme Court said: "Where death ......results from a maritime tort committed on navi-

gable waters within a state whose statutes give a right of action on account of death by wrongful act [the general maritime law giving no such right], the admiralty courts will entertain a libel in personam for the damages sustained by those to whom such right is given. The subject is maritime *and local* in character [the italics are ours], and the specified modification of, or supplement to, the rule applied in admiralty courts, when following the common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law." Here, even in a stevedore case, the local law was allowed application to the extent indicated.

In Grant Smith-Porters Co. v. Rohde, 257 U. S. 469, appealed from a federal circuit court, claimant was injured while working as a carpenter, constructing a bulkhead enclosing tanks on a ship docked in navigable waters. He was employed by a shipbuilding company engaged in constructing steam vessels for the United States government. The vessel on which he was working when hurt had been launched; and, though the Supreme Court states in an early part of its opinion that the boat was "substantially completed," yet, later, it treats it as "an incompleted structure." The State of Oregon, where the accident happened, had a workmen's compensation law to which, generally speaking, the employer and employee in this case were subject. The questions submitted to the Supreme Court of the United States for decision were (p. 475) : "1. Is there jurisdiction in admiralty because the alleged tort occurred on navigable waters? 2. Is libellant entitled because of his injury to proceed in admiralty against respondent for the damages suffered?" The thought in mind evidently was that if such jurisdiction existed, it would be exclusive. While answering the above questions in the affirmative, the court held that, since the ship involved was an incompleted structure (under the federal law,

contracts for constructing ships, even though seagoing, are accounted non-maritime: People Ferry Co. v. Beers, 61 U. S. 393, 402; Roach v. Chapman, 63 U. S. 129, 132; Thames Co. v. Schooner Francis McDonald, 254 U. S. 242, 243), "neither Rohde's general employment nor his activities at the time of the accident had any direct relation to navigation or commerce," and that (p. 476), "under such circumstances, regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule, would not necessarily work material prejudice to any characteristic feature of the general maritime law or interfere with the proper harmony and uniformity of that law." Again, at page 477, the court said: "Here, the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential." The specific answer, "Yes," given to each of the queries placed before the court, must be taken, with the above, as meaning that, although "the general admiralty jurisdiction" might under some circumstances extend to a proceeding to recover damages arising from a tort "committed on a vessel in process of construction when laying on navigable waters within a state" (pp. 477-8), yet where, in such case, the state in question has a local law reaching the particular facts, if these facts and the local law are of such a nature that to permit the latter to apply would in no wise materially affect any rules of the sea whose uniformity is essential to be maintained, the law in question will be allowed to apply, notwithstanding general admiralty jurisdiction. We think, from this Rohde Case and subsequent opinions mentioning it, the view may be fairly deduced that, in a case like the present, where neither the injured person's general employment nor his particular activities at the time of the accident bear any direct relation to navigation or commerce, a state workmen's compensation law may apply.

Mr. Justice MCREYNOLDS, who wrote the opinion in the Rohde Case, subsequently explained its meaning, in Great Lakes Dredge, etc., v. Kierejewski, 261 U. S. 479, 480-81, thus: "Neither Rohde's general employment nor his activities had any direct relation to navigation or commerce—the matter was purely local—and we were of opinion that application of the state statute, as between the parties, would not work material prejudice to any characteristic feature of the general maritime law or interference with its proper harmony or uniformity." Again, in Washington v. Dawson, 264 U. S. 219, 226, he said: "Grant Smith-Porter Ship Co. v. Rohde was a proceeding in admiralty to recover damages from the shipbuilder for injuries which the carpenter received while working on an unfinished vessel moored in the Willamette River at Portland, Oregon...... 'Neither Rohde's general employment nor his activities at the time had any direct relation to navigation or commerce.' We held the matter was only of local concern and that to permit the rights and liabilities of the parties to be determined by the local law would not interfere with characteristic features of the general maritime rules." Finally, in Miller's Indemnity Underwriters v. Braud, 270 U. S. 59, 64, the same justice said: "We......held [in the Rohde Case] that, under the circumstances disclosed, 'regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule, would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law.'" At another point he said that "the parties [in the Rohde Case] were clearly and consciously within the terms of the statute [the workmen's compensation law of the state] and did not in fact suppose they were contracting with reference to the general system of maritime law."

Miller's Indemnity Underwriters v. Braud, last referred to, Northern Coal & Dock Co. v. Strand, supra;

Sultan Ry. v. Dept. of Labor, supra, and Alaska Packers' Assn. v. Industrial Commission, supra, are the most recent cases to give an indication of what is meant by the expression "purely local."

In the Strand Case, the Supreme Court said, as shedding light on the meaning of the phrase in question: "The unloading of a ship is not a matter of purely local concern; it has direct relation to commerce and navigation." We may here remark that, while the kind of work plaintiff in the present case was doing at the time of his injury might be said to have a certain remote relation to navigation and commerce, yet it seems to us that such work cannot be held to bear any "direct" relation to those subjects.

In Underwriters v. Braud, first of the recent cases last mentioned, a diver employed by a shipbuilding company was killed while submerged in a navigable river, "sawing off timbers of an abandoned set of ways once used for launching ships, which had become an obstruction to navigation." He was awarded damages under a state workmen's compensation law, and in due course this award was affirmed by the Supreme Court of the United States. Mr. Justice McREYNOLDS there said (p. 64): "In the cause now under consideration, the record discloses facts sufficient to show a maritime tort to which the general admiralty jurisdiction would extend save for the provisions of the state compensation act; but the matter is of mere local concern and its regulation by the State will work no material prejudice to any charactertistic feature of the general maritime law." This can be as well said of the present case, where not even a tort is shown, merely an accidental injury of a character which might have occurred anywhere but which by chance happened on a boat in navigable waters.

In Sultan Ry. Co., etc., v. Dept. of Labor, appealed from a state court (the third of the recent cases referred to above), the application of a local workmen's compensation law was resisted on the ground that the workers

affected,—loggers employed by timber and mill companies,—fell under the exclusive jurisdiction of admiralty because their labors carried them upon a navigable stream. In deciding that the local act could apply, the United States Supreme Court said, "It is settled by our decisions that where the employment, *although maritime in character*, pertains to local matters, *having only an incidental relation to navigation and commerce*, the rights, obligations and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity." The above italics are ours. The original contracts of land employment and the incidental going upon navigable waters in the Sultan Case and in the one now before us seem analogous. As of the loggers in the former, so it may be said of the present plaintiff : that the labor of a maritime character at which he was engaged at the time of his injury had "only incidental relation to navigation and commerce," and since his contract of general employment is not shown to be other than a land contract, the mere incident that its performance carried plaintiff temporarily on navigable waters, was not sufficient to cause that employment, and the rights and liabilities which pertain to it, to be so deprived of their essentially local character that admiralty would take jurisdiction to the exclusion of a helpful state law.

In Alaska P. Assn. v. Industrial Commission (the last of the recent cases above mentioned), claimant, originally employed to do both land and sea work, was injured while endeavoring to push a stranded boat into a navigable river; an award under a state compensation act was sustained by the United States Supreme Court, Mr. Justice McReynolds saying, inter alia, "When injured, certainly he [the claimant] was not engaged in any work so directly connected with navigation and commerce that to permit the rights of the parties to be

controlled by the local law would interfere with the essential uniformity of the general maritime law. The work was really local in character." (Citing the Rohde and Braud Cases.)

It is difficult to deduce and state any general rule by which to judge whether a particular set of facts constitutes a "purely local" situation, within the meaning of the federal authorities, to which a local act may apply, or a situation governed exclusively by the maritime law; but, after studying the relevant authorities, it seems to us that in each case the determining questions are: (1) Did the injured person's activities at the time of the accident have a direct relation to navigation or commerce? (2) Were his activities of such a nature that the application of a particular local law, as between the parties, would work material prejudice to some characteristic feature of the general maritime law or interfere with its proper harmony or uniformity? See Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U. S. 479, 480-81.

In the present case, plaintiff was a mechanic; not a seaman in any proper sense of the term. So far as the record shows, he had no general maritime employment; he happened to be sent by his employer (a third party engaged by the shipowner) to do some painting in the engine room of a vessel laid up for repairs in navigable waters, and was injured while thus engaged, not by any act on the part of either the shipowner or its employees, nor because of any motion of the boat or other matter peculiar to navigation or commerce, but by pure accident, contributed to by one who, like himself, was working for the contractor engaged by the shipowner. This contractor, third-party employer, and the plaintiff had agreed generally between themselves that, in case of injury to the latter during the course of his employment, he would be entitled to compensation according to a schedule in the state compensation act. Here, as much as in the Rohde Case, we think it can be said, "the parties, plaintiff and defendant, contracted with reference to the state statute" and "the application of the local

law" to "their rights and liabilities" "cannot materially affect any rules of the sea whose uniformity is essential." Furthermore, if a state statute providing for recovery in cases of death due to a maritime tort,—a recovery which was not permitted in admiralty,—can be allowed application to a stevedore case, as not interfering with the proper harmony and uniformity of the maritime law (Western Fuel Co. v. Garcia, supra), surely a state statute,—giving rise to an implied agreement for compensation to a mechanic (whose general employment, so far as the record shows, was not maritime) accidentally injured during the course of his work, which, at the time of the injury, happened to be on a boat in navigable waters,—can be permitted application to the facts in this case, without undue interference with the uniformity of the federal law: see Great Lakes D. & D. Co. v. Kierejewski, supra. As we view it, there is nothing in the situation here presented which will cause material prejudice to any characteristic feature of the general maritime law or interfere with its proper harmony or uniformity if the rights of the parties, between themselves, are adjudged according to the local statute; therefore, we hold that the Pennsylvania Workmen's Compensation Act was properly applied.

In the cases which we have discussed, where admiralty took jurisdiction to the exclusion of the local law, the injury occurred while the person in question was engaged in activities which had a much plainer and more direct relation to navigation than the work of the present claimant. Moreover, in each of those cases the injuries resulted from a maritime tort,—that is, a wrongful act committed on the high seas or on navigable waters: Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 59, 60. While the jurisdiction of the federal courts "comprehends all maritime contracts, torts and injuries" (see Campbell v. Hackfeld, 125 Federal Reporter 696, 697, 700, citing and quoting from Judge STORY, in De Lovio v. Boit, 2 Gall. 398, 474, Fed. Cas. No. 3, 776), yet in all the federal cases where admiralty relief was

afforded to physically injured persons who were not members of the crew of, or constantly attached to, the ship on which they were hurt, the injuries were attributable to a maritime tort,—a fact emphasized in each instance: see, for example, Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 58 et seq.; Great Lakes v. Kierejewski, 261 U. S. 479, 481; Gonsalves v. Morse, 266 U. S. 171, 172; Northern, etc., Co. v. Strand, supra. Here, as previously stated, no tort was committed; so far as the record indicates, the injury to plaintiff was purely accidental. Under these circumstances, since plaintiff cannot in any proper sense be classed as a seaman, entitled in admiralty to a measure of relief for accidental injuries (see The Osceola, 189 U. S. 158), to refuse application of the local compensation law would in effect deprive him of all relief.

We may add, in conclusion, that, since the opinion of the Superior Court in this case,—accompanying the final judgment appealed from,—was written, the Supreme Court of the United States, in Northern Coal & Dock Co. v. Strand, supra, has definitely held, as we understand the majority view there expressed, that the states have no power, on the ground of implied contract, voluntary election, or any other theory, to put upon an employer, "in respect of men engaged to perform work ......on shipboard," when their labor bears direct relation to navigation or commerce, obligations of the kind imposed by the workmen's compensation acts; and, in our opinion, the insurance carrier can be held to only such liabilities as may be imposed on the employer. When, as here, however, the labor in question is not shown to bear any *direct* relation to navigation or commerce, a different situation is presented; and that is the key to the solution of this case. The judgment is affirmed.

Note.—The Long Shoremen's and Harbor Worker's Act of March 4, 1927, c 509, section 1, statute 1424 (U. S. C. A. Supplement of 1918, to Title 33, did not become effective until July 1, 1927) is not applicable to the present case. This note was written after the opinion in this case was filed.