## Stankiewicz v. Heights Construction and Supply Co. et al.

*Roscoe R. Koch,* for claimant and for employer.

*M. J. Ryan,* for insurance carrier.

HICKS, J., July 22, 1929.—This is an appeal from the decision of the Workmen's Compensation Board affirming the award of the referee in favor of the claimant and against the insurance carrier. Julian Stankiewicz, the claimant, sustained the loss of his left hand in the course of his employment with the Heights Construction and Supply Company. A claim petition was filed by him, to which the employer, Heights Construction and Supply Company, replied, alleging that its insurance carrier at the time of the accident was the Standard Accident Insurance Company of Detroit, Michigan, which had received notice of the accident, and that any liability for any compensation arising out of the accident was on the said insurance carrier. At the hearing

before the referee, counsel for the employer made a motion to make the Standard Accident Insurance Company a party defendant to the proceedings, which was opposed by counsel for the insurance company upon the ground that it was not the insurance carrier of the employer. The referee denied the motion of the defendant employer, and upon appeal by the claimant and the employer to the Workmen's Compensation Board, the latter reversed the referee, allowed the amendment so as to include the insurance carrier as a defendant and remanded the record to the referee for that purpose and for the further purpose of determining the liability or non-liability of the insurance carrier under its contract as disclosed by the record. Upon a subsequent hearing before the referee, it appears that the insurance carrier filed an affidavit replying to the claim petition (which affidavit we cannot find among the record papers), to the effect that the Workmen's Compensation Board is not the proper tribunal in which to litigate the contractual relationship between the Heights Construction and Supply Company and the insurance company and denied the jurisdiction of the board. The referee made an award against the insurance carrier, which, upon appeal to the Workmen's Compensation Board, was affirmed. An appeal was then taken to this court.

The appellant, Standard Accident Insurance Company of Detroit, Michigan, does not contend that the claimant did not suffer a compensable injury or that the order of the referee against the employer was incorrect and did not in any way contest the claim for compensation against the employer. There seems, therefore, to be no question as to the right of the claimant to have compensation. The appellant states the questions involved as follows: (1) Does the Workmen's Compensation Bureau have jurisdiction to adjudicate the contractual relationship between an employer and an alleged insurance carrier? (2) Is an alleged contract of insurance binding upon an alleged insurance carrier when said alleged contract of insurance was wrongfully issued by one not its agent and does not conform with the requirements of the acts of assembly of the State of Pennsylvania? (3) When an alleged insured has knowledge that the supposed agent by whom said alleged contract of insurance was issued did not have authority to write insurance, can an employee recover from the alleged insurance carrier?

The first question raised by the appellant involves the right of the referee and the Workmen's Compensation Board to make the insurance company a party defendant over its objection and to adjudicate the alleged contractual relationship between the employer and an insurance carrier. This question has been adversely decided to the appellant. The appeal in the case of Levan v. Pottstown & Phœnixville Ry. Co. et al., 3 D. & C. 385, presented the same question to the Court of Common Pleas of Philadelphia County on an appeal from the decision of the Workmen's Compensation Board. The two questions raised in that case were the identical questions raised in the instant case, to wit: First, was there a policy of insurance in effect at the time of the accident; and, second, had the referee power to make the insurance company a party to the proceedings over its objection? The Workmen's Compensation Board and the referee made the insurance company a party defendant over its objection, and also held that a policy of insurance was in effect at the time of the accident. After deciding this latter question, the court declares, on page 386, "the remaining question bears upon the right of the referee, upon the application of the claimant, to make the insurance carrier a party to the proceedings. Upon first impression, it would seem that the only way in which an insurance carrier could become a party would be by application to intervene for the purpose of protecting its insured. Insurance, ordinarily,

is a matter of contract between the insurer and insured, but by the Act of June 2, 1915, P. L. 769, an injured employee may also be regarded as one who is insured, since the policy is a direct promise to him." In that case, the action of the referee and the Workmen's Compensation Board in adjudicating the contractual relationship between the employer and the alleged insurance carrier, and the making of the latter a party defendant over its objection, was affirmed by the lower court. The insurance carrier appealed from the decision of the Court of Common Pleas to the Supreme Court, which case is reported as Levan v. Pottstown & Phœnixville Ry. Co. et al. and Utilities Mutual Ins. Co. of New York, Insurance Carrier, in 279 Pa. 381. The Supreme Court affirmed the judgment of the lower court.

The question, on appeal, was stated by the Supreme Court as being whether, at the time of the accident, the defendant was insured by the appellant. That is one of the identical questions involved in the instant case. The referee and the Workmen's Compensation Board had passed upon this question and found that the employer had been insured by the appellant at the time of the accident, and this action was affirmed by the Supreme Court. In passing upon the question of the right of the referee or the Workmen's Compensation Board to make the insurance carrier a party defendant over its objection, the Supreme Court, on page 385, declared: "The suggestion that it was improper for the referee to join appellant as insurance carrier was not pressed and is without merit. The policy in question, in conformity with the statute (Act of June 2, 1915, P. L. 769), makes such carrier primarily liable to the parties entitled to indemnity for all sums that may be awarded; also obligates it to defend all suits or proceedings instituted against the employer on account of injuries to employees. Before taking any definite action in a case, the insurance carrier must become a party of record: Bolden v. Greer et al., 257 Pa. 513, and see Chase v. Emery Manuf. Co., 271 Pa. 265. Appellant was, therefore, properly made a party of record." And to repeat, in the case under discussion, Levan v. Pottstown & Phœnixville Ry. Co. et al., supra, the insurance carrier, which denied that at the time of the accident it had insured the employer, was made a party defendant over its objection. It had not voluntarily appeared to defend against the merits nor had it petitioned to intervene. This case squarely decides the point against the appellant in this case. See, also, Span v. Accident and Guarantee Corp., 92 Pa. Superior Ct. 418, which was appealed to and affirmed by the Supreme Court in Span v. John Baizley Iron Works et al., 295 Pa. 18, wherein the Superior Court declared: "The compensation law creates a system of elective compensation, article III, sections 301, etc., June 2, 1915, P. L. 738. The related Act of June 2, 1915, § 1, P. L. 769, requires that the insurance carrier agree to be responsible directly to the employee for payment of compensation, and the supplement of June 26, 1919, § 401, P. L. 642, art. IV, P. L. 659, defines employer as including the insurer. The insurer may be made a party to the suit: Levan v. Pottstown & Phœnixville Ry. Co. et al., 279 Pa. 381. The judgment in this case against the insurer is in accord with the statute."

The second and third questions involved as stated by the appellant may be restated as one as follows: Can an employee recover upon an alleged contract of insurance, issued by one not the agent of the alleged insurer and known by the alleged insurer to have no authority to write insurance, and which does not conform with the statutory requirements? This involves (1) a question of fact, the fact of actual agency at the time of the issuance of the insurance contract in this case, or the fact of knowledge on the part of the insured of the revocation of the agent's authority, if the duty of giving

notice rested upon the company. The other (2) question involved, as to the effect upon the employee's right of recovery of the insurance company's failure to have its contract conform to the statutory requirements, is one of law, since non-compliance in this case is uncontradicted.

1. The referee's second finding of fact is as follows: "We find that the 'Standard Accident Insurance Company of Detroit, Michigan,' on the date and at the time of claimant's accident, . . . carried the Workmen's Compensation Insurance upon the employees of the defendant company. . . ." This is based upon the inferential finding either that the alleged agent was the actual agent or that the revocation of his authority was unknown to the insured. This finding is supported by competent evidence, as we view the testimony. Fred R. Metcalf, manager of the Philadelphia District of the insurance company, testified that the agent's authority to write compensation insurance for his company ended on June 13, 1926, prior to which time, it is not denied, the agent was the company's general agent with offices in the Borough of Shenandoah. Much stress is placed by the company upon a meeting on Aug. 24, 1926, held in Mr. Metcalf's office in Philadelphia, between him and the alleged agent in the presence of Mr. Nathan Auerbach, president of the employer defendant, the latter being present for the purpose of adjusting an automobile damage claim against the company. At this meeting, Mr. Metcalf testified that Mr. Auerbach left him under the impression that he was exceedingly interested in P. B. Houck, the alleged agent, with respect to this particular agency, and said if Houck was in financial straits, that he should give him a chance, to which Mr. Metcalf rejoined that the agency was transferred to the western part of the State, and that he could not do anything for him. But this testimony of Mr. Metcalf is wholly inconsistent with a letter written two days later by him to Houck, which was admitted into evidence, in which he states: "Since you were here I have had to give up the general agency which we were holding for your office to the western end of the State. I could not guarantee them anywhere near the production this other office would produce, so we had to let go of the agency. I have been talking with Mr. Greene, and he thought it would be possible to rake up a Regional Agency. This might or might not be satisfactory to you. If we could get the Regional Agency and the general agency opened up again we could grab that. You might let me know how you feel about the Regional." He could not have informed the president of the employer defendant in the Aug. 24, 1926, conference that Houck's general agency was transferred to the western part of the State, if his letter announcing the transfer "since you were here," two days later, is true. And the president of the employer defendant had no notice of this letter, as far as the testimony shows.

On the other hand, Mr. Auerbach denies the testimony of Mr. Metcalf, except as to his mission at his office to adjust an automobile damage claim. He heard Mr. Metcalf and the agent have a discussion about financial matters and asked that the agent be retained. Mr. Metcalf, he says, promised to send the agent blanks to write insurance, and adds that he did not know that the compensation business was closed between the agent and the company. In addition, on Sept. 1, 1926, Houck issued an indemnity bond for $20,000, later reduced to $10,000, in defendant insurance company on the stenographer and book-keeper of the employer defendant which was not canceled by the company, of which Mr. Metcalf says he had no knowledge, since his department had nothing to do with indemnity bonds. On Oct. 11, 1926, the binder to cover compensation risks of the defendant employer was issued by Houck. No notice was ever given the employer of the company's refusal to continue

the contract in force or to issue a policy in pursuance thereof, or that Houck was no longer its agent. The accident occurred on Oct. 22, 1926, eleven days after the binder had been issued and had taken effect, and on Nov. 6, 1926, the alleged agent wrote the company, stating that "he mailed some time ago daily reports" for various compensation insurance policies, asking their issue and mailing, among them, one for the employer defendant, advising the company that he had issued binders to cover the risks included in the daily reports. No reply whatever was made by the insurance company, although it had, on Nov. 4, 1926, returned to Houck copies of daily reports, refusing the business, which he had mailed on Oct. 29, 1926. Whether a copy of the daily report of the so-called binder in this case was included in the number mailed on the last-mentioned date does not appear.

According to Mr. Auerbach's testimony, the conference of Aug. 24, 1926, did not disclose the fact that Houck was no longer an agent for the company, and he left that conference believing the relationship still existed. He is corroborated by the Metcalf letter of Aug. 26, 1926, hereinbefore referred to. No notice of this change in relationship was brought to the attention of the defendant employer, of which Mr. Auerbach was president.

Whether Houck was the general agent of the company on Oct. 11, 1926, was a question of fact for the referee and the Workmen's Compensation Board, which was inferentially found against the insurance company, and there being competent evidence to support this finding, we cannot disturb it. And if the testimony of Mr. Auerbach, president of the defendant company, is to be believed, as late as Aug. 24, 1926, Houck continued to be the general agent and was so known to be by the insured, who continued to deal with him as the general agent of the insurance company in ignorance of the letter of Aug. 26, 1926, or any change in their relationship. So that, if the authority of the agent to write compensation insurance was revoked after Aug. 24, 1926, before the revocation could become effective between the insurance company and the defendant employer, notice of the same should have been given to the employer, which it is admitted was not done: 2 Corpus Juris, § 165, page 539; Grasselli Chemical Co. v. Biddle Purchasing Co., 22 Pa. Superior Ct. 426.

2. As to the effect upon the employee's right of recovery of the insurance company's failure to have its contract conform to statutory requirements, this question must also be decided adversely to the appellant.

On Oct. 11, 1926, the agent issued to the employer a "Binder Compensation Insurance," in which the insurance company "acknowledges itself bound by a compensation liability insurance undertaking described in the following declarations, and during the term of this binder the actual contract of insurance shall be evidenced by such of the policy form blanks in current use by the company during such term, as are indicated by the statements given in the Declarations." By its terms, it became effective at noon on the day of issuance, provided for cancellation upon twenty-four hours' notice, for termination by delivery to the assured of a duly executed policy or, in any event, by expiring upon the fifteenth day after the effective date. It set out the amount of premium, by whom it was ordered, and the time of actual delivery. It was signed by the company and by the agent. The form used was an automobile binder, in which the word "compensation" was inserted instead of "automobile." During the life of this binder the claimant was injured.

R. L. Welsh, a compensation insurance statistician of the Department of Labor and Industry, was called by the defendant company, who testified that

this binder was not in accordance with the rules and regulations of the Insurance Commissioner of Pennsylvania and did not have the endorsement of the commissioner, a copy of which was admitted in evidence. It is the contention of the insurance company that the claimant employee cannot recover because the binder was not issued in compliance with subdivision *(d)*, sections 653 and 654, of the Act of May 17, 1921, P. L. 682, known as the "Insurance Company Law of 1921," and was, therefore, void.

No policy was issued, but the binder was prepared and delivered by the agent, which was in the form of a preliminary contract of present insurance and was necessarily of the most informal character, but not only by its express terms, but also by the decisional law of this State (Eureka Ins. Co. v. Robinson, 56 Pa. 256, also 32 Corpus Juris, § 185, page 1100), it is to be regarded as made upon the terms and subject to the conditions contained in the ordinary form of policies used by the company at the time. Although it has been decided that charter or statutory requirements that policies shall be executed in a certain manner do not apply to these preliminary contracts (32 Corpus Juris, § 184, page 1100), since both sides to this controversy have treated the binder or preliminary contract as if it was a policy of insurance, we do not now decide whether the temporary or preliminary contract of present insurance is included within the terms "policy" or "agreement to deliver insurance," as used in subdivision *(d)*, sections 651 to 653, inclusive, page 762.

The pertinent portions of the act with which the binder did not conform, as contended by the appellant, are as follows: "Section 653. . . . No such policy or contract of insurance, nor any agreement to deliver such insurance, shall be issued except upon a form approved by the Insurance Commissioner as complying with all the terms and provisions of this act; . . ." also, "Section 654. Neither the State Workmen's Insurance Fund, nor any insurance corporation, . . . shall issue, renew or carry any policy or contract of insurance against liability under 'The Workmen's Compensation Act, . . .' except in accordance with the classifications, underwriting rules, premium rates, and schedules or merit rating, promulgated by the Rating Bureau aforesaid for the risk insured and approved by the Insurance Commissioner for such insurer. . . ."

The next paragraph provides for the filing of a complete copy of every policy, or a true copy of the substantive provisions of any policy or contract, and a true copy of every endorsement, with the Rating Bureau.

Upon a careful reading of the Insurance Company Law of 1921, *supra*, especially the provisions pertinent to Workmen's Compensation Insurance, we cannot find that non-compliance by the insurance company, either in the issuance of a policy or agreement to deliver such insurance, makes such policy or agreement unlawful or void. The last paragraph of section 655, on page 764, provides: "The Insurance Commissioner shall have the power to suspend or revoke the license of any insurance company which violates any of the provisions of subdivision *(d)* of this article," which subdivision *(d)* is entitled "Workmen's Compensation Insurance." It will thus be seen that non-compliance therewith is not made a misdemeanor, as in the cases of Mechling v. Philadelphia Life Ins. Co., 53 Pa. Superior Ct. 526; Medoff v. Fisher et al., 257 Pa. 126, and Rosenthal v. Ostrow, 287 Pa. 87, cited by the appellant; neither does the act provide that failure to comply with the hereinbefore quoted sections renders the policy void. The violation of an insurance statute does not render a policy void where the statute does not so provide: 32 Corpus Juris, § 199, page 1108.

Here we have a case in which an attempt is made on the part of an employee, suffering from an admitted compensable injury, to collect his just compensation from an insurance carrier which sets up its own non-compliance with statutory provisions relating to the form of policy, endorsements thereon, filing of copy thereof with Insurance Department, and issuance in accordance with the classifications, underwriting rules, premium rates and schedule of merit rating approved by the Insurance Commissioner to defeat recovery. The commands of the violated provisions are addressed to the company alone, the sole penalty of non-compliance is the penalty of suspension or revocation of license which is imposed on the company alone, and the insured is not regarded as in *pari delicto*, much less the employee of the insured, for whose especial benefit the statutory provisions in question were enacted. It would be unjust to refuse enforcement of the contract by him. The act not making non-compliance with the statutory provisions on the part of the company unlawful and void, to hold otherwise would be to impose upon the beneficiaries of the Workmen's Compensation Law the duty of investigating the insurance policies of employers of this Commonwealth to learn whether the company carrying the risks for their protection complied with the prescriptions of the statutory law or the regulations of the Insurance Commissioner. This we do not believe is either the policy or the intent of the law.

And now, July 22, 1929, the defendant's exceptions are dismissed, the order of the referee is affirmed and judgment is now directed to be entered for the claimant and against the Standard Accident Insurance Company of Detroit, Michigan, in the sum of $2179.25.

From M. M. Burke, Shenandoah, Pa.